BRUSH ELECTRIC CO. et al. v. ELECTRIC STORAGE BATTERY CO. et al.

(Circuit Court, D. New Jersey. August 27, 1894.)

1. PRELIMINARY INJUNCTION — INFRINGEMENT OF PATENT — SUFFICIENCY OF PROOF.

A preliminary injunction will not be granted where the affidavits of eminent scientists are at complete variance on the question of infringement of complainant's patent.

2. SAME—LACHES.

A preliminary injunction will not be granted against an alleged infringement where it has been continuous for more than four years to complainant's knowledge, without any action being taken by complainant, and defendant has recently increased its capital invested in the business, and is financially responsible.

Suit by the Brush Electric Company and others against the Electric Storage Battery Company and others for infringement of patent. Complainants move for a preliminary injunction. Motion denied.

Witter & Kenyon, for complainants.
John R. Bennett, for defendants.

GREEN, District Judge.   Two reasons conjointly compel a denial of the motion for a preliminary injunction made by the complainants.   The validity of the letters patent in question is beyond dispute.   They have been sustained by all the courts before which they have been the subject of litigation.   The only question to be considered upon this motion, under the circumstances, is that of infringement.   While it is well settled that a preliminary injunction will issue almost as a matter of course in any given case wherein the defendants are shown to be guilty of infringement, after an adjudication establishing the validity of the letters patent involved in the litigation, yet it is equally well settled that to warrant and justify the exercise of this extraordinary power the proof of the alleged infringement must be clear and decisive.   Equity peremptorily insists that such action, so drastic in its effects, shall be taken only in those cases wherein a clear, unclouded, equitable right to the interference of the court is shown.   In all other cases the demand is to be met by refusal, otherwise unfair prejudgment may result.   In the case at bar the proof of infringement fails to attain to this standard.   It is quite true that on the part of the complainants certain gentlemen, most eminent in their profession, and whose opinions as experts are entitled to great weight, have not hesitated, in their affidavits presented to the court upon this motion, to assert quite positively that not only the storage battery manufactured by the defendants, but as well the process used in the manufacture, do without doubt infringe some, if not almost all, of the claims of the letters patent under consideration; and they laboriously strove to justify the opinions so expressed, first by giving to the letters patent and the various claims an exceedingly broad construction, and, secondly, by basing such broad construction upon a yet broader construction of the legal conclusions of the learned judges who have in past litigations defined and characterized the inventions of Faure and Brush.   Giving full weight to the opinions of these witnesses, elucidated and most eloquently enforced upon the attention of the court in the exceedingly able argument of counsel, it still remains to be said that the defendants have, in opposition thereto, presented opinions of other scientists, equally as learned, and of equal standing and repute in the scientific world, which are directly antagonistic thereto, and by which they most distinctly and positively declare that in their judgment neither the process pursued by the defendants nor the completely manufactured battery impinges in the slightest particular upon those secured to the complainants by their letters patent.   And so upon the one side are found the concurring opinions of Prof. Morton and Prof. Chandler, Prof. Houston and Dr. Barker; upon the other, those of Prof. Brackett, Prof. Cross, Prof. Thomson, and Mr. Van Size.   These are gentlemen of unquestioned veracity, thoroughly understanding the subject-matter under consideration, stating opinions with confidence which they believe to be well formed; and yet they arrive at conclusions which are irreconcilably and diametrically opposed.   It must be apparent that affidavits of this character, ex parte as they are, can only be productive of doubt.   When the statements so made and the opin-

ions so expressed come to be tested by a severe and thorough cross-examination, beyond question those which show themselves securely founded upon reason and fact will be immediately accepted and concurred in.   But until then the existence of a doubt, well founded and reasonable, as to the right of the complainants to the remedy they ask, cannot be overlooked.   The existence of such doubt must now, at least, control the action of the court.   It is fatal to a motion for a preliminary injunction.   To justify the interference of a court of equity pendente lite by way of an injunction, the actual or threatened infringement of a right must appear as clear as the noonday sun.

There is another reason why this motion must be denied.   Equity demands of a complainant that he should display great diligence in the assertion and vindication of his rights.   Inexcusable delay on his part, though it may not amount to conclusive proof of acquiescence, nevertheless may be, and often is, sufficient cause to disentitle him to the summary interference of the court on his behalf by way of interlocutory injunction.   Whatever may be the original equities of the case as between the parties, if the complainant stands quietly by, without seeking to enforce his rights, while the defendant expends time and labor and money upon the enterprise sought to be enjoined, upon faith that no actual or effective objection thereto will be made, he will be shorn of any right to appeal to the court of equity for assistance.   Huffman v. Hummer, 17 N. J. Eq. 263; Whitney v. Union Ry. Co., 11 Gray, 359; Carlisle v. Cooper, 21 N. J. Eq. 599.   In other words, the principle has been thus stated:   No one can have relief if his own conduct has led to that state of affairs which occasions the application.

The proofs submitted to the court on this motion show these facts:   The defendant corporation was organized under the laws of the state of New Jersey in 1888.   Its sole purpose was to engage in the manufacture and sale of electric storage batteries of the type known as the "Chloride Accumulator."   Its works were located at Gloucester, in this state; and from the time of its incorporation to the present it has carried on its business without interruption. Its existence, and the character and extent of its operations, were well known to the principal officers and managers of the complainant corporation.   In the conduct of its business at various times, and especially in 1891, 1892, and 1893, the defendants openly installed storage battery plates of the alleged infringing type in various public buildings, and for various corporations.   Thus, for example, they furnished plates or batteries to the Provident Insurance Company of Philadelphia; to the Metropolitan Railway Company of Washington, to the Union Square Theater in New York, and elsewhere.   The fact that these plates were furnished by the defendants was well known to the complainants.   Besides, early in 1893, the defendants issued a pamphlet, in which was printed an opinion of Prof. Chandler, of Columbia College, on storage batteries, and which contained a detailed and correct statement of the mode of construction and operation of the storage batteries of the defendants, and a full and succinct comparison between them and the bat-

FEDERAL REPORTER, vol. 64.

teries of the complainants. This pamphlet was widely circulated, and admittedly the complainants knew of it. In July, 1893, the defendant, through its president, sent to the complainant corporation a letter, in which, among other things, is the following statement and appeal:

"Philadelphia, Pa., July 27, 1893.

"Mr. William Bracken, President Consolidated Electric Storage Co., New York, N. Y.—Dear Sir: I am favored with copies of your letters of 27th of February and the 24th of July, 1893, to Mr. George W. Pearson, president of the Metropolitan Railway Company of Washington, D. C., wherein you state that the battery manufactured by the Electric Storage Battery Company of Philadelphia is a clear infringement of the Brush patents, and of which 'there is no earthly doubt.' * * * By what authority do you say our battery infringes the claims of your Brush patent? Surely on the authority of no court, for you well know that no court has declared our battery to be an infringement; and although we have been, to your knowledge, openly engaged in manufacturing our batteries for some years, you have not, down to this moment, proceeded against us, although threatening to do so for nearly eight months past. You apparently propose to dispose of our battery and business without even resorting to the courts wherein such questions are usually determined. * * * Unlike you, we have sufficient confidence in our position to submit the question to the courts empowered to consider and determine such questions, and there we invite you to meet us at once; and unless you do so, or discontinue your libelous statements against our battery, we will take such steps as we are advised are open to us to protect our interests. We are advised by our counsel and experts that our battery does not infringe any of the claims of your patents, and, having confidence in their opinion, we propose to continue making and selling our battery, and shall protect and save harmless all users of them, not only as against any claim you may make, but against all claims from whatever source. Now, being advised of our intentions, we demand, in view of statements made in your letter to Mr. Pearson and other parties, that you proceed at once against us on a bill for infringement, accompanied with motion of injunction, so that the question of our infringement of your patents may be determined, and to that end we advise you, viz.: We are a New Jersey corporation, with a factory at Gloucester, in that state, where batteries are being manufactured daily; and we will at any time furnish you with one of our batteries, at the usual price, accompanying same with a sworn statement of precisely how they are made, with permission to use the same in any proceedings against us. We have, to avoid delay, authorized our counsel, Mr. John R. Bennett, Potter Building, New York City, to accept service papers in our name, and to aid you in every way possible to reach the courts at the earliest possible moment; and you can arrange with him, either direct or through your counsel, for one of our batteries, and a statement of its construction. If you have confidence in your position, you will, of course, accept our most reasonable proposition to proceed against us at once; and if you do not we hereby notify you that we shall proceed against you to protect our interests, holding you responsible for the damages resulting to our business by the making of statements and the sending out of such unfounded libelous letters as you have sent to Mr. Pearson."

To this letter the complainants returned no answer beyond a mere acknowledgment of receipt, and admittedly took no action towards the assertion of their claims until months after. In the meantime the defendants, assuming, as it cannot be denied they had reason to do, that no attack was to be made upon them, increased their capital stock $250,000, and proceeded to erect, in addition to their existing factories, a very extensive plant, at a very large cost. It was not until 1894—months afterwards—that this bill of complaint was filed. Realizing the necessity of making

explanation of their delay, the complainants allege that it was caused first by their diligent searching for some purchaser of the defendants' storage battery within the jurisdiction limits of the circuit court of the United States for the district of Southern New York, in which forum much of the previous litigation concerning the Brush and Faure batteries had taken place, and so avoid, by the bringing of their suit in that jurisdiction, some of the trouble and labor which would necessarily follow the commencement of a suit in this jurisdiction; and further, that all the operations of the defendants were considered by the complainants to be simply tentative in the line of producing a practical commercial storage battery, and only an effort on the part of the defendants to persuade the complainants to spend thousands of dollars in substantially a moot litigation to stop the making and sale or use of only a few batteries, and because the complainants believed the venture of the defendants was destined to be a failure, and die a natural death. It is hardly necessary to say that such excuses do not justify the laches of which the complainants have been clearly guilty. If the rights of the complainants are now trespassed upon by the defendants, they were in like manner trespassed upon more than four years ago; and the trespass of which so loud complaint is made now, has been continuous. For reasons satisfactory to themselves the complainants, well aware of these continuous trespasses, chose to stand by without taking action looking to the vindication of their rights and the prompt punishment of the trespasser. The result of such inaction on the part of the complainants is found in the increased contribution of the capital stock of the defendant corporation, of hundreds of thousands of dollars, and the expenditure of an exceedingly large amount of money in the erection of a greatly extended plant. If, in fact, the rights of the complainants have been invaded by the alleged infringing acts of the defendants, it is scarcely an exaggeration to say that the dilatory conduct of the complainants in protecting their rights amounted to open encouragement of, or at least to silent acquiescence in, such invasion. Such conduct bars absolutely the remedy* asked for at this time by the complainants. Bridson v. Benecke, 12 Beav. 1; Smith v. Railway Co., Kay, 417.

It was admitted upon the argument that the defendants were financially responsible, and amply able to respond to any award of damages that might be made against them. Under all the circumstances, and for the reasons given, the motion for a preliminary injunction is denied.