## TEMCO MFG. CO. v. NATIONAL ELECTRIC TICKET REGISTER CO.

District Court, E. D. Missouri, E. D.
September 28, 1928.

No. 6837.

Hugh K. Wagner, of St. Louis, Mo., and E. W. Marshall, of New York City, for plaintiff.

Rodney Bedell and Luther Ely Smith, both of St. Louis, Mo., for defendant.

FARIS, District Judge. This is an action in the usual form for the alleged infringement of claim 60 of the Meier and Sullivan patent, No. 1,039,167, and of claim 53 of the Swift and Reller patent, No. 1,160,669, each by assignment pending prosecution, the property of the plaintiff.

The defenses are, in addition to the conventional ones of noninfringement and invalidity of the Swift and Reller patent, laches and unclean hands. The defense of unclean hands is bottomed on the contention that this action has been brought and is being financed, prosecuted, and maintained by the Automatic Ticket Register Corporation, to which plaintiff has contracted, by an option agreement in escrow, to convey and assign one of the patents in suit, to wit, No. 1,160,669, and other patents not in suit, as soon as final judgment shall be rendered against the defendant herein, adjudging the validity of the patents as against the defendant.

The defense of laches is bottomed upon the allegations that (as the evidence fairly discloses) defendant has been making and selling the accused device since 1914; that it has sold some 5,000 machines, which are now in use by many different concerns throughout the country; that defendant has invested large sums in a factory and in machines, machinery, and dies for the manufacture of the accused device, all with plaintiff's knowledge, and that this action was not brought until the sixth day of October, 1924, more than 10 years after the beginning of the infringement complained of here.

In fairness, if it has any relevance, it may be said, in passing, that an action for infringement was begun in 1914 by plaintiff against defendant, for that defendant had infringed patent No. 1,039,167 by making a machine under the teachings of another patent which had issued to one W. L. Sullivan. This machine was abandoned by defendant in 1914, and defendant began making a different machine (the accused device) under still another patent, issued to said Sullivan. For this reason, that is, because the subject-matter of the former infringement suit was abandoned by defendant (and others, it may be), the first suit was dismissed by plaintiff in 1916, and was never reinstated.

I see but little relevance in this situation. The former suit was leveled against a different structure, made under a patent the teachings of which were different from those of the patent under which defendant made the accused device; at least, some of the witnesses say so, and their statements are not denied. Moreover, the Patent Office must have deemed there were differences, otherwise it would not, or should not, have issued the second patent to Sullivan, under which latter

patent, as said, defendant made the accused device. I am unable to see, then, wherein the bringing of the first suit for infringement and its pendency for two years, at all, or to any extent, operates to cut down the total term of years of delay to sue, since, in the meantime, that is, during said term of two years, defendant was engaged in making the present accused device.

So, the facts remain, that for almost 10 years, if not more, defendant had been engaged in making and selling the alleged infringing devices, before this action was commenced. That the trial of the case was then not pushed for some 3½ years I do not at all consider, because such consideration would necessitate a careful examination of the record in order to ascertain whether delays pending prosecution are attributable to defendant, or whether they are attributable to plaintiff.

Has plaintiff been guilty, under these facts, of such laches as to absolutely preclude the maintenance of this action? I think it has. It is, of course, difficult to apply any fixed statute of limitations to a suit for the infringement of a patent, however strictly such limitations may apply to an accounting thereunder for profits and damages. This is so because some one act or more of infringement may have occurred only a day before the action for infringement was commenced. Practically, infringement is ordinarily a continuing fact, or a continuing trespass on the rights of the patentee, which has been daily occurring; here, for example, since either January or October, 1914. Some of the witnesses (who are not contradicted) say that the making and selling of the accused device began in January, 1914. The patent issued to Sullivan, and under which the accused device was made, was applied for on October 26, 1914. So, from the latter fact there exists the presumption that there had been a reduction to practice as early, at least, as the date of application. But I have no doubt that, other things being present, laches may be imputed to a plaintiff who, with knowledge of infringement, stands by for many years and permits the alleged infringer to build up, at great expense, a large business, which will be worthless if plaintiff's complaint shall succeed, and who by inaction permits many thousands of other persons to become liable as constructive infringers from the fact of the use of an infringing device. Of course, laches does not depend on mere lapse of time. It is probably true that mere failure to sue for any but the latest act of infringement, which took place, perhaps, only

the day before the suit was filed, would not of itself bar an action, on the ground either of laches or because of any statute of limitations, provided the action be brought during the life of the patent.

In passing, it may be said that state statutes of limitations in no wise control a federal court in an injunction suit for the infringement of a patent. This is so well settled that the numerous citations upholding the view taken need not be set down. Nothing is clearer, from the cases, than that courts are slow to apply the doctrine of laches in order to wholly bar an action to enjoin the infringement of a patent which has yet any substantial time to run. Largely, the reason is that infringement is, as forecast, a continuing trespass, so long as the infringement continues and the patent is in force. The application of the doctrine of laches is not bound by any statute of limitations. Courts may apply the doctrine before the bar of the opposite statute of limitations, which would bar a suit at law, or they may refuse to apply it even after the lapse of such a period as would bar a law suit. In equity the lapse of time affects only a matter of pleadings and the question of where the burden of proof lies. Kelley v. Boettcher (C. C. A.) 85 F. loc. cit. 62.

Apposite cases involving the application of the doctrine of laches to patent infringement suits are Beattie, etc., Co. v. Smith (C. C. A.) 275 F. 172; Rajah, etc., Co. v. Belvidere, etc., Co. (C. C. A.) 275 F. 764; Taylor v. Sawyer, etc., Co. (C. C. A.) 75 F. 301; McLean v. Fleming, 96 U. S. 245, 24 L. Ed. 828, and Menendez v. Holt, 128 U. S. 514, 9 S. Ct. 143, 32 L. Ed. 526.

The doctrine deducible from the above cases is that laches, or long delay unaccompanied by circumstances of equitable estoppel, will not preclude a court of equity from granting to a complainant on final hearing such relief as may be just and equitable, but laches may preclude a judgment for damages and profits for past infringements. Rajah, etc., Co. v. Belvidere, etc., Co., supra.

The true rule, then, that is, the situation which will warrant application of the doctrine of laches to an injunction suit to enjoin the infringement of a patent, is, of course, the converse of the rule just stated; that is, long delay to sue, with knowledge of the fact of infringement, is an absolute bar when such delay is accompanied by such circumstances of equitable estoppel as would render a judgment for complainant unjust and inequitable under all the facts and circumstances of the case. Universal Arch Co. v. Ameri-

can Arch Co. (C. C. A.) 290 F. 647; Yates v. Smith (D. C.) 271 F. 27; Richardson v. Osborne (C. C. A.) 93 F. 828; Woodmanse, etc., Co. v. Williams (C. C. A.) 68 F. 489; Brush, etc., Co. v. Electric, etc., Co. (C. C.) 64 F. 775; Blakey v. Kurtz (C. C.) 78 F. 368, and Waite v. Chichester Chair Co. (C. C.) 45 F. 258.

In each of the above cases there was refusal to enjoin alleged infringers, after the lapse of years, and present the circumstances of equitable estoppel. The above cases, both those for and those against the doctrine, disclose that, while courts are slow to bar an equitable action to enjoin infringement, yet they will do so without hesitation whenever the facts warrant.

Here, in the case at bar, as already partially disclosed, the facts are that plaintiff, with full knowledge of the alleged infringement, delayed its suit herein from at least the 26th day of October, 1914, until the 7th day of October, 1924. In the meantime, plaintiff, the owner of the patents in suit, suffered corporate death; in other words, it voluntarily relinquished its charter as a corporation. After 3½ years plaintiff was raised from the dead, and almost immediately thereafter brought this action, with the active financial assistance of the Automatic Ticket Register Corporation, and in the interim, as already said, defendant had made and sold some 5,000, or more, of the alleged infringing devices, perhaps to as many, or almost as many, different persons or concerns. During the period of complainant's death, or suspended animation, defendant expended more than $50,000 in erecting a plant and factory, and has invested large additional sums in machinery, tools, and dies useful only in making the alleged infringing structure.

The only element of equitable estoppel which is even debatably absent as to defendant, then, is that of ignorance of the existence of plaintiff's patents, or, what I deem is equivalent thereto, ignorance of the fact of infringement. There is nothing, however, to indicate that any of the 5,000 purchasers knew of the existence of plaintiff's patents, and, of course, any or all of the 5,000 users may be sued by plaintiff for infringement. Defendant, of course, knew of these patents of plaintiff. It had been sued, on March 23, 1914, for the infringement of patent No. 1,039,167, now here in suit, by a device made by it under the patent to Sullivan, No. 1,308,966, which device was immediately thereupon abandoned by defendant, and this suit was shortly thereafter voluntarily dismissed by plaintiff. On October 26, 1914,

while the suit for infringement last mentioned was pending, defendant's assignor, Sullivan, filed his application for another patent for improvements in ticket issuing machines. On this application a patent issued to Sullivan on July 6, 1915, and under this latter patent the defendant has, since at least October 26, 1914, been making the accused structures.

Sullivan says the first machines were made and put on the market in January, 1914, nearly 11 years before this suit was brought. I do not think it can be said that defendant knew it was infringing. Probably, it had either to be ignorant of the fact of the actual existence of plaintiff's patents, or it had to be ignorant of the fact that what it was making infringed plaintiff's patents. How far, and to what extent, defendant was saddled with constructive notice of the fact of existence from the bare fact of issuance of a patent, and as to whether, when a patent has been issued and an infringing device is made, the maker is absolutely saddled with notice of the fact of infringement and must always interpret the patent at his peril as the courts may later look at it, I need not consider. These are, obviously, troublesome questions. Here, however, defendant was making a device under a patent applied for and issued to Sullivan after the dates of the applications and issuance of the patents of defendant here in dispute, but, nevertheless, defendant had the right to rely on the presumption of validity from the fact of the grant of the patent to Sullivan, so far, at least, as to rebut the presumption, if one existed, that it knew its accused device infringed patents of whose existence defendant had knowledge. In short, if knowledge of the fact of infringement be ordinarily imputed to one who makes a device, which infringes, from the mere existence of the fact itself, such presumption ought to be rebutted as to the issue of good faith, vel non, by the fact that defendant's device was made under a subsequent patent, solemnly issued by the Patent Office. I can see no reason why defendant, called on to make out its good faith so as to eke out an element of estoppel, cannot rely upon the presumption of validity of the patent under which it acted.

I conclude that the defense of laches ought to be held to be a complete bar, under the peculiar facts here. I do not consider the defense that this action is being champertously maintained by the Automatic Ticket Register Corporation, nor the contention that the latter is the real party in interest. In fact, I do not think the latter is the real par-

ty in interest, but, in passing, it is obvious that it is maintaining this action. However, this defense may or may not .be good. I have not considered it, because I have not found it necessary to consider it, under the view I am constrained to take of this case. Neither have I thoughtfully nor carefully considered the defense of noninfringement. Casually, upon the trial I was, and now am, of the opinion that plaintiff's patents are not strictly pioneer patents, and that it may not cover the whole field by such broad claims as' are to be found in claims 60 and 53, and that therefore the plain differences between the construction and operation of the accused device, as compared to the teaching of the patents in suit, are sufficient to avoid infringement, under the doctrine of the case of Anakin Lock Works v. Dillon Lock Works (C. C. A.) 292 F. 45. But, as the view I am constrained to take of the matter of laches, in my opinion, disposes of the case, I need not go into the question of infringement, or into the question of the validity of claim 53 of the Swift and Reller patent. It may well be that defendant, as the assignee of Sullivan, who was a coinventor of the Meier and Sullivan patent in suit, cannot urge the invalidity of the latter patent, but I need not consider that question.

The finding and judgment, therefore, will be for defendant, dismissing plaintiff's bill with costs, and a decree may be submitted accordingly.