**ROLLINS et al. v. LIGGETT DRUG CO., Inc.**

No. 171.

Circuit Court of Appeals, Second Circuit.

Jan. 4, 1937.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

Louis Schumacher, of New York City, (James N. Catlow, of New York City, of counsel), for defendant-appellant.

Bierman & Chandler, of New York City, for complainants-appellees.

AUGUSTUS N. HAND, Circuit Judge.

This is the usual suit for patent infringement. The device relates to headgear for women and consists of a bandana for covering the head and keeping the hair in place, to which is attached an eyeshade or visor for protecting the eyes from the sun. The article as designed has had considerable vogue and has proved to be convenient for use in sailing, motoring, and in sports generally whenever it is sought to keep the hair from being blown out of place and to shield the eyes.

We hardly suppose that it will be said that a woman who has tied a bandana around her head and shaded her eyes from the sun by wearing an eyeshade may be ranked among inventors. Nor do we imagine that a college student cramming for examinations, or a barrister preparing his case for trial, who keeps himself awake by covering his head with the traditional wet towel and supplements the wet towel with the academic eyeshade, as many doubtless have done, is in a position to demand a patent. To use an eyeshade or visor in order to shield one's eyes from the sun, rather than from the light of a gasburner or of an electric bulb, can hardly involve a patentable step. To apply an eyeshade or visor to any headdress is merely to obtain protection for the eyes by a well-known device which one might need irrespective of whether she was bareheaded or wore a bandana or a bonnet. It can bring about no new result. Accordingly, any justification for a patent must lie in the mode of attaching the visor to the bandana.

The patentees in the case at bar argue that their mode of attachment is original and important. It consists of no more than cutting the bandana or other square piece of material "on one of the diagonals from one corner to the opposite corner" (instead of folding it into the same shape) and sewing the straight edge of the fabric "directly to the inner curve of the visor * * * with the result that a puckering or gathering of the material between the two ends * * * of the visor results." The gathering causes a draping of the hood portion over the head of the wearer and leaves the ends of the bandana so that they may be tied in a knot at the back of the neck and may thus secure the head covering from dislocation and protect the hair from being blown about.

The complainants place great stress on the importance of laying a straight edge against a curved edge. Such a juxtaposition produces fullness, so that the handkerchief fits down on the head and the visor will tilt forward when the bandana is tied. The arrangement will both provide a satisfactory line of vision and will also shade the eyes instead of confining the vision to a line below a horizontal plane about on a level with the eyes. It was familiar practice, however, to sew a straight to a curved edge. That this is so appears from United States patent No. 1,599,096 to Marks, where the crown of a cap having a straight edge is sewed to the curved edge of a visor, also from the child's bonnet illustrated in the record at page 121, figures 341 and 352. (See, also, page 125, figure 432.) Indeed, the court below found that the "joining of a bias edge on a curved edge is old in dressmaking and in millinery. * * *"

A close reference to the complainants' headgear is United States patent No. 1,-239,910 to Harris. To be sure, the visor of the Harris patent did not have a curved inner edge and it was sewed to a head fabric that had a straight edge. Moreover, in Harris the tying ends of the fabric which fasten it to the head of the wearer are not the ends of the material forming the head piece, but are lateral extensions of a band which fastens down the fabric to the visor. But we can see no difficulty in adjusting a visor to a handkerchief, whether these elements be sewed together along two straight edges, two curved edges, or a straight and curved edge. So far as a fullness in the head piece might be desired, the millinery art afforded ample teaching whereby any competent person would be able to increase the fullness ad libitum. It is hard to see why the Harris fabric and visor, though made with a straight edge sewed to a straight edge would not provide an eyeshade· set at a satisfactory angle if the kerchief were adjusted to the head properly and the strings were tied down.

The case, after all, comes down to the degree of invention involved in the addition of an eyeshade to a bandana tied on the head in the way bandanas have been tied from time immemorial. We do not regard the thought of thus providing a visor in order to shield the eyes as requiring talent of that unusual order which justifies a patent. The mode of attachment and adjustment was quite devoid of originality and might be employed by any routine milliner skilled in the art.

For the foregoing reasons, the patent in suit is void for lack of invention. Accordingly, the decree is reversed, with costs, and the cause is remanded with directions to dismiss the bill.