## KELLER v. AMERICAN SALES BOOK CO., Inc. (two cases).
### Nos. 2118A, 2180.

District Court, W. D. New York.
Jan. 20, 1939.

Harry C. Kayser, of New York City (Earl D. Rader, of New York City, of counsel), for plaintiff.

Stephen H. Philbin and William J. Barnes, both of New York City, for defendant.

KNIGHT, District Judge.

The two actions above-entitled have been consolidated and are being tried as one. The issues in each are the same, except as to the period of alleged liability. For the purposes of this opinion reference will be made to the defendants as one.

Plaintiff sues for the alleged infringement of Keller Patent No. 1,489,833. Claims 5 to 8 and 14 to 25, inclusive, are in suit. Claims 6, 17 and 25 are typical, and those only need be discussed.

The patent is titled "Method of Operating upon Printed Webs" and relates to the "production from a continuous printed web or webs of books, pamphlets, magazines, periodicals, newspapers, folders and the like." The application was filed December 30, 1919, and the patent issued April 8, 1924.

The practice in the manufacture of books, magazines and pamphlets now is, and heretofore has been, to print the web (sheet on which the printing appears), cut it into sheets of uniform dimensions thereby making signatures (printed sheets containing a number of pages, as 4-8-12-16), fold the individual signatures, assemble the signatures in their sequence, and bind. Keller proposed to simplify and make this work more efficient by eliminating the cutting of the web into sheets in the press room and the separate handling of the sheets during

the several succeeding operations. In his proposal the paper is drawn from the supply roll through cylinders, which print both sides of the web, then between other cylinders which crease it transversely (successive creases or folds being in opposite directions, partaking of an accordion or zigzag fold). The creased web is then dropped down into a truck or bin fold on fold.

His method is designed to operate to interfold a plurality of webs. This is done by aligning two or more bins or trucks, each containing a single web, bringing the ends of the separate webs together, withdrawing the webs from the separate positions aligning them with creases in register and either refolding them to produce a single pack for storage purposes or feeding them to apparatus for cutting, stitching and folding. The printed matter in such composite pack is so arranged that, when the signatures are folded and cut, the paging will run in consecutive order. The method by which Keller proposes to gather webs from separate stacks and assemble them so that the creases of one web interfit with the creases of the other webs is the basis for the patent. So far as claim is made here everything else in the process is old in the art. Webs were printed singly and in plurality, transversely creased at determined intervals, and stacked by means of such creasing. It is old in the art to print a

web and zigzag fold it transversely, and superimposing and then folding simultaneously several printed webs is also old in the art and conceded so to be. The claims in suit are not concerned with the apparatus for performing the operations which take place after the web group has been completed and leaves the last group of fingers of the web assembling device.

Claim 6 reads: "The method which consists in separately printing a plurality of webs, transversely creasing each web at predetermined intervals, placing said creased webs in separate stacks, and withdrawing the webs from said stacks with the creases of one web interfitting with the creases of an adjacent web."

Claims 17 and 25 are substantially the same as Claim 6, except as to the statement of the relation of the transverse creases and that Claim 25 refers to the assembly of the webs rather than the withdrawal thereof.

The only thing new or claimed to be new in these typical claims is the method of withdrawing the webs from the bins or trucks so as to effect a proper register when a plurality of webs are employed, and control the feed of a single web or web group for the subsequent operations.

This method is illustrated by the following diagram from the patent:

Keller Patent No. 1,489,833 Issued Apr. 8th, 1924

J shows the trucks; W, the webs; H, the transverse creases; K, the knife which cuts webs of more than one signature wide; L, the knife which transversely severs the webs at the required length; 14, shows the longitudinal stitching; M and N, the folding rollers. The webs are assembled by means of fingers, which mechanically lift each web at alternate transverse creases, the separate webs being mechanically brought together, one superimposed upon the other as the fingers pass them along, each set of fingers adding an additional web to the composite web and passing the web to the next set of fingers as it advances toward the storage bin for interfolding or to the cutting, stitching and folding machinery.

Defendant does not manufacture books, magazines, pamphlets, periodicals, newspapers or folders. It does manufacture what is known as manifold stationery, described as "stationery with which carbon is associated to make multiple copies of business entries in salesbooks, autographic registers, billing machines, typewriters, * * *." It has been engaged in that business for many years and has a volume of business running annually into many thousands of dollars. It manufactures forms for production orders, bills of lading and the like, utilized generally by railroads, large manufacturers and by other business interests. Defendant prints its forms on long strips of paper, with perforations between each form. It is then dropped into a container, folding automatically to form a zigzag pack. Several of these packs are formed, arranged in the desired sequence, the ends of the packs joined, the webs drawn manually from the packs, and assembled together in a composite zigzag pack. It should be noted that defendant's perforations do not control the feeding or the withdrawal movement of the webs as called for by Claims 14 and 15, and therefore these claims are clearly not infringed.

Defendant prepares the composite pack in three ways: (1) Without further action, after assembly it is shipped to the purchaser loosely folded in a suitable container. The purchaser folds the pack at a desired length, interposes carbon, if desired, and runs it through a machine or typewriter; (2) In a type of pack to be shipped with carbon interleaved, in order to prevent slipping of the carbon, the pack is stapled loosely between each successive fold by being run through a rotating stapling machine; (3) In a type designed for use in a machine which will bring the original and copy forms into, exact registration for use, holes are punched on the margins of each strip at the time of manufacture. These strips when ready for use are fed through a specially adjusted machine having pins which fit into the holes and draw the several forms into alignment or exact registration. If the supply is used on a machine not equipped to effect registration automatically, the material is brought into alignment manually by the user.

By plaintiff's method the web is transversely "creased or folded, successive creases or folds being in opposite directions" to permit the webs to be fitted together in alignment in an assembly of webs. Defendant does not crease the web but makes transverse perforations between successive forms. In its method of manufacture it is not necessary to secure exact register of the printing on the original with the printing on the copies. In plaintiff's method the webs are assembled by machinery; in defendant's method by manual operation. Under certain circumstances creases could not be employed by defendant in its process. Where the packs are folded for use with more than two forms face up the creases would be objectionable as a refold of the crease in the opposite direction would be required. In the stapling machine operation utilized by the defendant for certain forms, it would not be possible to unfold and fold oppositely by a simple change in the movement of the strips as may be done when the loose hinge made by perforation is employed. Where the forms are to be used upon a flat surface, the creases would tend to prevent making of proper copies by reason of the separation of the forms by the crease. By the use of the transverse creasing at fixed intervals, the Keller method is specially adapted for use in making books, pamphlets and the like. Transverse perforations between the forms specially adapt defendant's web to use for manifold stationery and forms.

Defendant contends that the claims in suit are invalid for lack of invention, invalid by reason of the prior art or are so limited by the prior art that they can not validly cover defendant's methods. Defendant cites as prior art Lawson Patent No. 406,845, issued July 9, 1889, McDowell Patent No. 585,394, issued June 29, 1897, Denison Patents Nos. 631,107 and 631,108,

each issued August 15, 1890, and Hainer Patent No. 1,143,386, issued June 15, 1915, and Hagemann Patent No. 1,456,773, issued May 29, 1923, application filed July 17, 1917.

Defendant company is the owner of the Lawson patent, having acquired it from the Carter-Crume Company. It is a device patent. The patent describes a method of making a manifold sales book or pad in which copies are made by the use of carbon paper. Concededly the patent covers a zigzag pack formed by folding a single continuous strip having the original form printed in alternating spaces on the outside and the copy printed in the alternating spaces on the reverse side, these being so arranged for use that writing on the original would be duplicated on the copy. The strips are perforated between the forms transversely. It is the contention of the defendant that this patent also describes a composite zigzag pack of two strips, one carrying the original sales slips and the other the duplicate slips, and that, after being zigzag folded separately, the two strips are interfolded into a single zigzag pack. On the other hand, plaintiff claims that this patent describes, so far as it relates to the use of two strips, strips interfolded together without prior separate folding. The claim in question reads: "The combination, * * * of a series of zigzag folded sales slips and a series of slips for facsimile copies, interfolded * * *." Standing alone this claim might fairly be read as describing the interfolding of zigzag folded slips, but such interpretation is supported by Figure 14 of the patent drawings which show two strips zigzag folded separately, and the specifications which read: "Fig. 14 illustrates a series of consecutive sales slips and a series of consecutive copy sheets, both adapted to be folded zigzag and to be used with relation to each other and with duplicating fabric." In Carter Crume Co. v. American Sales Book Co., et al., C.C., 124 F. 903, 904, Judge Hazel, referring to this particular claim, states: "Claim 4 substantially describes the sales slips as being zigzag folded, and then interfolded with the copy slip." There is evidence that manifold sales books were made up by Carter-Crume Company, once owner of the Lawson Patent, by interfolding two zigzag strips and were sold prior to the date of the Keller invention. Some question is raised as regards the practicability of following this alleged Lawson two-strip method. It may be pointed out

that the method illustrated by Figure 14 of the patent, i. e., printing the originals on one web and the copies on another, is the method which defendant uses today and which is alleged to infringe. With this method different weight or color of paper may be used for the copies. Practical results can be obtained also by using the same paper for original and copy and alternating the printing of the original and copy on successive folds, and alternating also between the face and reverse side of the web. This is illustrated by Figure 15 of the Lawson Patent, although the additional method is also disclosed of folding a web in the center to provide two strips of forms.

The object of McDowell No. 585,394, as stated in the patent, is "to provide a holder or case for the leaves which are in a continuous strip and folded in a zigzag form in a manifold memorandum book. The patent refers to the use of "double layers of strips" folded in zigzag form but does not describe the method of assembly. A diagram shows the complete assembly in the form of Lawson.

Denison Patents Nos. 631,107 and 631,-108, both relate to devices adapted for use for manifold copies of sales slips. Neither patent describes the method of putting the zigzag packs together.

Hainer Patent No. 1,143,386, like Lawson and Denison, relates to an autographic register in which there is a magazine to hold accordion-like folds of slip sales underneath a writing plate, over which the strips are passed. When the order is written down on the top strip, all strips are deposited in the magazine and later drawn again over the plate for writing such as prices etc. When these strips are first placed in the magazine, they are zigzag folded, the method of folding not being a part of the patent. Hainer is a device patent only.

Hagemann No. 145,673 describes an autographic register. The continuous strips come from separate rolls and are not zigzag folded either before or after use. This patent shows the method of aligning or registering the printed forms on the several strips at the time of use. Similar to this register but not developed until after the grant of the patent in suit, is a register which utilizes forms made up into a flat pack. The mechanism for drawing the forms into position and aligning them for use is the same. After use the forms are

refolded into a zigzag pack. The Wiz collating machine is a variation of the Wiz register and is used by the defendant to make up the composite flat packs for shipment to the customer. A number of single web packs are placed in order and the ends brought together and threaded into the collater, the operation from that point being the same as in the register, the webs interfolding into a flat pack as they issue from the collater. The Hagemann patent does not anticipate the patent in suit, since it discloses no use of interfolded webs. The Wiz register for using the flat pack and the collater for forming said pack were developed after the grant of plaintiff's patent. Defendant's contention that the Wiz register and collater follow the teaching of the Hagemann patent can not be sustained, since Hagemann makes no disclosure of interfolded creased webs.

For some time, commencing prior to 1916, and continuing to this date, the A. S. Gilman Printing Company, or its successor Gilman Fanfold Company, has made and sold stationery under the name of Fanfold, a name evidently taken from the method employed. The forms were printed alternatingly on the face and reverse side, across a web of paper. Longitudinal perforations were made by the press between each column of forms. The web was then rewound on rolls, run through a former which zigzag folded the web longitudinally, and dropped loosely into a bin or box. The single strips were then drawn out of the bins by hand, either perforated or creased latterly by machine, then folded either manually or by machine into zigzag folds on the creases or perforations. When the order called for more copies of a form than one web of paper would accommodate, another web was run off and folded as above-stated and then the two zigzag folded webs were brought together manually by picking up each of the various sections and zigzagging them into a composite pack. Where a customer desired strips of stationery with copies of a different paper, each strip was formed separately and folded separately before being zigzag folded into a pack. These strips were creased or perforated transversely prior to being combined and brought into register by means of the creases or perforations. While there have been some changes in the method employed by Gilman, none have been material so far as the question involved here is concerned. At least six witnesses. each of whom had been employed by the A. S. Gilman Company, or its successor, for years, testified in detail regarding the method employed by Gilman. Each testified in substance that the method employed by A. S. Gilman Company, and successor, was such as has been hereinbefore described.

■ Plaintiff's method is described in his patent in connection with the use of a complicated piece of machinery. The method has never been employed in this connection though eighteen years had expired after the application was filed and thirteen years since the patent was issued, before suit was brought. No license under it was ever issued prior to the commencement of this suit. This delay may not amount to laches such as absolutely precludes recovery, Temco Mfg. Co. v. National Electric Ticket Register Co., D.C., 33 F.2d 777, but it is a factor for consideration. Under these circumstances, plaintiff is not entitled to construction of "any broader scope than it is clearly required to be given." Cocks et al. v. Rip Van Winkle etc., 9 Cir., 28 F.2d 921; Dernell Potato Products Co. v. Snelling, 2 Cir., 38 F.2d 788; Benoit v. Dubl-Cushion Egg Carton, Inc., 38 U.S.P.Q. 323.

In making the application plaintiff's attorney said: "applicant has disclosed broadly and entirely new method of pamphlet or magazine production." While the patent may be held to cover the latter type, it is essential to consider the plaintiff's intent in connection with the comparison of the methods. None of the patents hereinbefore referred to, except Hagemann, was cited before the Patent Office. A reasonable explanation for this may be found in the fact that the method may have been considered solely in connection with the mechanism shown in the patent.

■ A presumption that the patent is valid flows from its issuance. Chesapeake & O. R. Co. v. Kaltenbach, 4 Cir., 95 F. 2d 801. Doubt of validity is to be resolved in favor of the applicant. In re Davis, Cust. & Pat.App., 77 F.2d 640. But it is obvious that such presumption and doubt may be overcome by evidence. The evidence is sufficient in this respect.

■ In view of the prior art, it can not be said that it would amount to invention to interfold a plurality of creased webs into zigzag packs. To approve the validity of the claims in suit which purport to cover any method would endow the patent with a scope not justified by the disclosure and

perhaps not contemplated by the inventor. Certainly the manual method of assembly is so elementary that its use can not be said to amount to invention. Thus the claims may not be held to cover the manual method of assembly. Invention contemplates some creativeness, not merely the use of the skill of one learned in the art.

Paraphrasing a sentence in the opinion in Rollins et al. v. Liggett Drug Co., Inc., 2 Cir., 87 F.2d 290: The mode of assembly was quite devoid of originality and might be employed by any routine manufacturer skilled in the art. "The patent seems to us another instance of a kind which must become more and more common, as the arts advance in understanding and multiplication of detail, only a corollary of what had gone before, demanding no more than the competent use of knowledge already at hand." Texas Co. v. Sinclair Refining Co., 2 Cir., 87 F.2d 690, 693. "Invention does not reside in doing the obvious thing." St. Pierre v. Red Patch & Reliner Co., 2 Cir., 87 F.2d 766, 767. See also Textile Mach. Works v. Louis Hirsch Textile Machines, 2 Cir., 87 F.2d 702, affirmed, 302 U.S. 490, 58 S.Ct. 291, 82 L.Ed. 382. The rule of construction in this respect is clear and authorities almost without number support it.

■■ In the opinion of the court the invention intended to be described is a mechanical method of assembly designed to save time and avoid numerous difficulties attendant upon handling. It is sufficient to determine that the claims in suit are invalid as not constituting invention, insofar as they purport to cover the manual method of assembly of the zigzag packs. Similarly it must be found that the claims in suit are invalid over the prior patent to Lawson and the prior use of A. S. Gilman Company.

■ The defense of non-infringement is also set forth in the defendant's answer. Even were the claims held valid, it would be necessary to find for the defendant on the question of infringement. While the claims read upon the defendant's method of assembly, there is no substantial identity between the defendant's process and that described by the specifications of the patent. Union Simplex Train Control Co., Inc. v. General R. Signal Co., D.C., 11 F.Supp. 854, affirmed, 2 Cir., 91 F.2d 950; Royer v. Chicago Mfg. Co., C.C., 20 F. 853; Royer v. Coupe, 146 U.S. 524, 13 S.Ct. 166,

36 L.Ed. 1073. In view of the fact that many of the component parts of the process were well known in the art prior to the alleged invention, it is evident that the means for carrying out the process are a fundamental part of the patent. "Always patent claims are to be read in the light of the specifications which limit them to what is substantially as described in order to avoid, when possible, holding them invalid, because covering only some function, principle, or result which others are free to obtain if they can in any substantially different way." Samuel M. Langston Co. v. Continental Container Corp., 2 Cir., 80 F. 2d 847, 849. See also Royer v. Chicago Mfg. Co., C.C., 20 F. 853; Cinema Patents Co. v. Warner Bros. Pictures, 2 Cir., 66 F. 2d 744, 747. Under the present patent, the apparatus described by plaintiff for effecting the results sought must be considered an integral part of the patent. Since defendant does not use any similar device or accomplish the same result in the same way, the defense of non-infringement must be upheld.

I find:

1. That the method taught in the Keller Patent No. 1,489,833 does not disclose invention, since it involves nothing more than what is obvious to one skilled in the art.

2. That the method taught in the Keller Patent No. 1,489,833 is found in the prior art in Lawson Patent No. 406,845.

3. That the method taught in the Keller Patent No. 1,489,833 is found in the prior use of the A. S. Gilman Company.

4. That defendant does not use the process described by the patent and claimed in the claims in suit.

I therefore conclude:

1. That the claims in suit are invalid for the following reasons:

A. That they do not constitute patentable invention.

B. That they are anticipated by prior patents and prior use.

2. That the claims in suit are not infringed by defendant.

Judgment may be entered accordingly. Further or other Findings of Fact and Conclusions of Law may be submitted for action by this court; otherwise this opinion is to be taken as including Findings of Fact and Conclusions of Law required by the rule of this court.