BALTZLEY et al. v. SPENGLER LOOMIS MFG. CO. et al.

(Circuit Court of Appeals, Second Circuit. December 10, 1919.)

No. 66.

1. PATENTS ⬡328—PAPER BINDING CLIP NOT ANTICIPATED.

    The Baltzley patent, No. 1,139,627 for a paper binding clip, claims 3, 7, 12, and 14, held unanticipated, valid, and infringed.

2. PATENTS ⬡160—FILE WRAPPER EVIDENCE ONLY ON QUESTION OF ESTOPPEL THROUGH REJECTED CLAIM.

    In considering the validity or scope of a patent the only purpose for which the file wrapper can be examined is to ascertain whether estoppel has arisen through rejected claims.

3. PATENTS ⚫═══289—LACHES BARRING RECOVERY OF PROFITS OF INFRINGEMENT MATTER OF INEQUITY.

Laches which will prevent the recovery of profits from an infringer is not a mere matter of time, but is a question of the inequity of enforcing the claim.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by Louis E. Baltzley, as trustee, and the Cushman & Denison Manufacturing Company, against the Spengler Loomis Manufacturing Company and the Automatic Pencil Sharpener Company. Decree for defendants, and complainants appeal. Reversed.

Action is upon claims 3, 7, 12, and 14 of patent 1,139,627, May 18, 1915, to L. E. Baltzley for a "paper binding clip." This generically means a mechanical device, which, usually by spring action, controlled by finger strength, serves to temporarily keep together without tearing or piercing, papers and leaflets of the sort that accumulate in every place where clerical labor is performed. There have been many of them and the demand is large, if they are cheap enough.

The clips of both parties hereto belong to a definite subclass of such desk conveniences, wherein the gripping and holding power is obtained by forming or bending one small rectangular sheet of resilient metal, so that two opposite sides or edges thereof are set closely parallel to each other, perhaps touching. When thus formed, the bent sheet is a spring against which the gripping parallel edges can be opened to let in whatever is to be held fast, and when the opening power is released the edges close together again, against whatever has been inserted. Both these clips also, belong to a still smaller, but not unknown, class, in which the sheet of resilient metal is bent and set into a form of triangular cross-section; both therefore, must have some means—preferably affixed to the metal, which is both clip and spring—enabling the user to open or separate the parallel gripping edges.

Baltzley furnishes such means by folding back and outwardly both his gripping edges and so cutting away the tubular rolls thus formed as to leave jaws, into which are inserted the outwardly turned extremities of a hairpin spring of steel wire. When each spring, thus journaled, is turned back against that side of the triangular body which provided its jaws, the ends of the steel springs projecting beyond that side of the triangular clip which is the base (assuming the clip edge to be the apex) are levers, which, when pressed toward each other by thumb and finger pressure, enable the user to open the clip. When the papers are inserted, hand pressure is released, the grip closes, and the springs are turned forward to lie flat against the papers, or by compression of the "hairpin" can be removed, and the leaflets (e. g.) be treated like a bound book.

Of the claims in suit the third is most general and the fourteenth of the greatest particularity. They are as follows:

"3. A binder clip for loose papers, comprising a section of sheet metal having converging sides, each side provided with spaced handle receiving and retaining means located thereon, and a spring handle for each side having oppositely disposed ends journaled in said means."

"14. A binder clip comprising a section of sheet metal having converging sides, each side provided with two spaced integral handle receiving means extending outwardly therefrom, the handle receiving means of each side spaced apart, and resilient handle for each side having oppositely disposed ends tending to spread a greater distance apart than said spaced handle receiving means and journaled in said spaced means whereby said spaced handle receiving means confine said ends under spring stress and prevent free swinging movement of the handle."

The defendants' clip has the same triangular body as plaintiffs', operates on the same mechanical principle, but differs, in that the hairpin spring, instead of having its ends journaled into rolls formed on the clip edges, has said ends

inserted into what are called "retaining straps, integral" with the sides of the triangle; i. e.. into straps made by appropriately slitting and punching outwardly portions of metal situated approximately in the middle of each side, adjacent to the apex of said triangular body.

Baltzley's application was filed in 1910. For defendants' device patent application was filed in 1913, and patent issued shortly after the date of plaintiffs' (Spengler 1,150,073, dated August 17, 1915). The court below decreed that plaintiffs' claims were invalid but, if deemed valid, were not infringed, and therefore dismissed the bill. Plaintiffs appealed.

Hans v. Briesen, of New York City (Fred A. Klein, of New York City, of counsel), for appellants.

D. A. Usina, of New York City, and Wilkinson & Huxley, of Chicago, Ill. (Hervey S. Knight, of Chicago, Ill., of counsel), for appellees.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). [1] In addition to the mechanical concept above set forth, the patentee had a secondary idea described in the specification and covered by claims not in suit. If the spring handles are moved on their journaled ends, with nothing but friction retarding motion, they may become loose like the bail of a bucket similarly journaled (see Weber, 550, 429).

To prevent this, Baltzley so inclined the edges of his tubular rolls touching the spring handles as to produce a camming effect, which (cammed surface co-operating with spring handle) produced a snap action, forcing said spring handle into the final forward or backward position, as might be desired. This subsidiary advantage does not affect this case, which, as its first query, asks whether the invention, without the camming adjunct, presents patentable novelty.

The patent of Dudley (622,610) is the nearest and best reference. It shows a clip of bent resilient metal, elliptical in cross-section, and distended by applying to each clip edge a tool of metal, which by a "tongue and groove" arrangement seizes an edge, and when laid back, like Baltzley's handles, furnishes the necessary leverage. These tools were removable, and were to be used for any number of clips; yet, if the user desired, they might be turned forward, much like Baltzley's handles, and left flat against the papers in the clip.

The merest examination of this device shows it to be cumbersome, expensive, and difficult, if not dangerous, in operation. Yet it was a machine of sorts, and when it functioned at all it did so for the same mechanical reason as does that of the patent in suit. This patentee's contribution to the art, consisted in devising a new, simple, and convenient method, not strictly of operation or function, but of co-operation. There could hardly be a better example of the truth of the remark of Lacombe, J., in Miehle, etc., Co. v. Whitlock, etc., Co., 223 Fed. 650, 139 C. C. A. 204:

"Patentable novelty is sometimes found in discovering what is the difficulty with an existing structure and what change in its elements will correct the difficulty even though the means for introducing that element into the combination are old and their adaptation to the new purpose involves no patentable novelty."

So here, whatever Baltzley's intellectual processes really were, he might well have considered Dudley, and by substituting for Dudley's clumsy and separate tools a spring wire handle, journaled externally to the clip sides, produced (as he did) an admittedly inexpensive, useful, and salable article, simply by correcting the "difficulty with the existing structure"; i. e., Dudley's, which never had (on this record) any field of practical utility. We have no doubt that patentable invention is disclosed by the foregoing.

There being no difference, mechanical or structural, between defendants' article and that of the claims in suit, other than the positioning of the steel spring handles, infringement would seem plain. Here the trial court fell into error in considering the subsidiary camming adjunct as Baltzley's single contribution to the art. This is a mistake. The invention advanced in this suit was made without any reference to a cam.

[2] The argument for noninfringement is sought to be strengthened by reference to the contents of the file wrapper. On this point our view was restated in Spalding v. Wanamaker, 256 Fed. 533, —— C. C. A. ——, viz. that the only purpose for which the file wrapper can be examined is to ascertain whether estoppel has arisen through rejected claims. See, also, Walker on Patents (5th Ed.) § 187a. The reason why that may be important is because the doctrine of estoppel holds "the utterer to the truth of his speech." Babbitt v. Read, 236 Fed. 45, 149 C. C. A. 252.

Having from this viewpoint examined the file wrapper, we are of opinion that the patentee's disclosure stated fully and at first facts sufficient upon which to ground the claims in suit, and such claims or their equivalents he never receded from. Many claims, first propounded, were obviously too broad; but Baltzley never "accepted limitations imposed by the rejection of broader claims" and affecting the claims in suit. The residuum is ample for the purposes of this case. See Goodwin, etc. Co. v. Eastman, etc., Co. (D. C.) 207 Fed. 357, affirmed 213 Fed. 231, 129 C. C. A. 575.

This camming effect, however, must be considered from another angle. The device of defendants' patent further attempts to differ in its mechanics from that of the patent in suit, in that its cam is transferred from the edge of the tubular jaw to the spring handle; but the triviality of any cam is proven by the style of defendants' commercial article shown as an exhibit in this court, which works well, does everything indicated by the claims in suit, and has no cam at all. Friction is enough for practical purposes.

[3] Finally, it is urged that plaintiffs' laches should forbid the remedy of accounting. On this subject there is no evidence; but a comparison of dates shows that defendants (who were infringing before Baltzley's patent issued) were not sued until something less than three years after such issuance. It is not profitable to mention decisions wherein this or that lapse of time has been held sufficient to justify this defense; for "laches is not a mere matter of time, like limitation, but is a question of the inequity of enforcing the claim." Hubbard v. Manhattan Trust Co., 87 Fed. 59, 30 C. C. A. 528 and cases cited. It is

now argued that defendants exercised great care to avoid infringing, and should therefore have been promptly sued for their own advisement. We think that, in the sense of careful studying under professional advice, and after personal warning from plaintiffs, just how near to plain copying their intended imitation might go, they were very careful. Their patent shows it; and we are quite unable to see how, if Baltzley had issued when Spengler was considered by the Office,[1] Spengler could have failed of rejection "on Baltzley of record."

Under such circumstances, there is no inequity in regarding this infringement as persistence in wrongdoing, when the light was unusually strong.

Decree reversed, with costs, and case remanded, with directions to grant plaintiffs the relief prayed for in their bill.

---

[1] Spengler was allowed January 16, 1915, but did not issue for seven months, because fees were not paid until July. Baltzley was allowed April 17, 1915, and fees were paid two days later.