## UNIVERSAL ARCH CO. v. AMERICAN ARCH CO.

## AMERICAN ARCH CO. v. UNIVERSAL ARCH CO.

(Circuit Court of Appeals, Seventh Circuit. September 28, 1922. Rehearing Denied May 8, 1923.)

### Nos. 3100, 3101.

1. **Patents ⬡⟳328—904,494, for locomotive boiler furnace, held not infringed.**
   The Moore patent, No. 904,494, for brick arch for locomotive boiler furnace, *held* not infringed.

2. **Patents ⬡⟳328—934,723, for locomotive boiler furnace, held valid and infringed.**
   The Graham & German patent, No. 934,723, for brick arch locomotive boiler furnace, *held* not anticipated, valid, and infringed.

3. **Patents ⬡⟳328—1,138,033, for brick for locomotive furnace arches, claim 5, held invalid, and other claims not infringed.**
   The Neff patent, No. 1,138,033, for brick for locomotive furnace arches, claim 5, *held* void for lack of invention, and other claims not infringed.

4. **Patents ⬡⟳328—1,046,008, for brick for locomotive furnace arches, held not infringed.**
   The Neff patent, No. 1,046,008, for brick for locomotive furnace arches, *held* not infringed.

5. **Patents ⬡⟳328—1,138,031, for brick arch for locomotive boiler furnaces, held void for lack of invention.**
   The Neff patent, No. 1,138,031, for brick arch for locomotive boiler furnaces, *held* void for lack of invention, in view of the prior art.

6. **Patents ⬡⟳328—990,375, for arch for locomotive boiler furnaces, held not infringed.**
   The Moore patent, No. 990,375, for brick arch for locomotive boiler furnaces, *held* not infringed.

7. **Patents ⬡⟳328—1,138,037, for brick for locomotive boiler furnace arches, held not infringed.**
   The Moore patent, No. 1,138,037, for brick for locomotive boiler fire box, *held* not infringed.

8. **Patents ⬡⟳328—1,069,974, for locking brick for locomotive furnace arches, claim 3, held void for lack of invention.**
   The Moore patent, No. 1,069,974, for a locking brick for locomotive furnace arches, claim 3, *held* void for lack of invention.

9. **Patents ⬡⟳328—1,342,931, for spacer brick for locomotive furnaces, held void for lack of invention.**
   The Willet patent, No. 1,342,931, for a spacer or elevating brick for locomotive furnace arches, *held* void for lack of invention.

10. **Patents ⬡⟳328—934,157, for locomotive boiler furnace, held void for lack of invention.**
    The Gaines patent, No. 934,157, for a locomotive boiler furnace, *held* void for lack of invention, in view of the prior art.

11. **Patents ⬡⟳328—1,178,752, for refractory wall in locomotive boiler furnace, held valid and infringed.**
    The Rogers patent, No. 1,178,752, for a locomotive boiler furnace, *held* valid and infringed.

12. **Patents ⬡⟳289—Suit for infringement barred by laches.**
    Where an alleged infringing device has been publicly and widely used for 10 years without objection by the owner of the patent, a suit for infringement will not be entertained, when no explanation of the laches is given.

---

⬡⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the American Arch Company against the Universal Arch Company and cross suit. From the decree, both parties appeal. Affirmed.

- In the court below the issues were disposed of in accordance with the following opinion of Mack, Circuit Judge:

No. 1334 is a suit for infringement of 11 patents. The defendant in No. 1334 is one of the plaintiffs in No. 1315, and the plaintiff in No.. 1334 is the defendant in No. 1315. The latter suit is for infringement of Helbling patent, No. 881,072. All of the patents in suit relate to brick arches and walls or parts thereof in locomotive boilers. While the several patents are not particularly complicated or involved, the joinder of so many of them in one proceeding, in which none of the testimony was taken in open court has rendered the task of the trial judge of appraising each of the patents on its merits more difficult, and is in part a cause of the delay in rendering this opinion.

All parties agree that the American Arch Company has contributed very substantially to the commercial development and success of sectional brick arches and walls in locomotive boilers, but the litigation here is concerned with the exact extent to which that company is entitled to hold the field by reason of its patents rights. The use of brick arches and walls in locomotive boilers is said to make possible considerable saving in. fuel and to improve combustion in the boilers. Most of the patents relate to arches. These are composed of refractory bricks resting upon supporting tubes, which are anchored in the forward and rear walls of the fire box. The arches are built so as to slope upwardly and rearwardly from the forward end of the firebox. Like all modern arches, they are made of relatively small, light bricks, and are built in sections in order to facilitate repair and replacement, and to make possible the introduction and removal of the several bricks through the door of the fire bo⁻.

The patents which do not relate to arches of this character relate to brick walls built in locomotive boilers so as to interpose a combustion chamber between the grate and the flues. The several patents in suit will now be considered:

[1] 1. Moore arch, patent No. 904,494, original filed May 20, 1907; divided and this application filed July 10, 1908; issued Novmeber 17, 1908. Claims 2 and 23, alleged to be infringed, read as follows:

"2. A locomotive boiler furnace in combination with a group of arch tubes of less width than said furnace, a refractory front arch laterally coextensive with said group of arch tubes and resting thereon, and side or marginal members also supported by the outer arch tubes and resting against and supported by the sides of the furnace, in the spaces between the edges of said arch, and the sides of the furnace, substantially as described."

"3. A locomotive boiler furnace, its flue sheet and side sheets, in combination with a group of longitudinally arranged arch tubes in said furnace, a refractory arch body of less width than the furnace and supported by said tubes and bricks of greater width than the spaces between the edges of the arch body and said side sheets, said bricks resting against said side sheets and closing said spaces substantially as described."

Plaintiff contends that this patent covers "the broad conception of closing the space between the outer arch tube and the side sheet of the fire box by means of inclined bricks, which would take greater or lesser angles of inclination according to the varying distances between the tube and the side sheet." Defendant insists that, inasmuch as the specifications describe a structure in which the marginal brick wedges against and cooperates with the outer middle brick of the front arch, the patent "is limited to a locomotive arch comprising an arch body supported on tubes and held against lateral movement in the fire box by wedging side bricks arranged between the edges of the arch body and the side sheets of the fire box." If the Moore patent is to be so construed, the defendant's struc-

ture would not infringe, since the side bricks of the defendant's structure touch the outer tube on which the front or center arch rests, but do not touch the outer bricks of the center arch.

Moore specifies that one of his aims is "to avoid the use of brick supporting lugs on the side sheets and a further object is to provide an arch which will be self-tightened by the vibration of the locomotive." This he accomplishes, as the drawings show, by the wedge action of the marginal brick against the outer middle brick. I agree, therefore, with defendant's contention, and find noninfringement.

If the claims were to be broadly construed, so as to involve infringement by defendant, they would be invalid, in my judgment, as anticipated by Edge Moor 1901 structure and Tonkin's patents No. 772,071 and No. 821,552. These relate to tile baffles in water tube boilers. There is admittedly a vast difference between a baffling tile partition, which serves to conduct gases over the evaporating surfaces of the water tubes in a water tube boiler, and a refractory arch in the fire box of a locomotive, and thus in immediate contact with the products of combustion, which it mixes and retards. But both types are included in the broad art of brick construction, and no invention would seem to be involved in transferring elements from the one to the other, unless some distinctly new function were performed, or some distinctively new and useful result or advantage were achieved.

I can find no such function or result in Moore's adaptation of the Edge Moor or Tonkin structures to a locomotive fire box. I may add that, as construed, the Moore claims are not anticipated by Vogt German patent of 1906, or by the C., R. I. & P. 1901 arch, because Moore's marginal bricks, unlike Vogt's and C., R. I. & P.'s, are supported exclusively by the same tubes which support the middle bricks.

[2] 2. Graham & German arch, patent No. 934,723 (filed September 11, 1908, issued September 21, 1909). It is conceded that this patent, if valid, is infringed. The patent discloses a sectional arch composed of relatively small refractory bricks, each of which is separately and independently supported upon the arch tubes, so that no brick touches another or is dependent upon another for lateral or vertical support. By developing the structure disclosed in this patent, the American Arch Company and its predecessor were able to reduce the heavy cost of maintenance and repair, which had theretofore seriously affected the commercial use and value of the refractory arch in locomotive boilers. The brick in such arches is subject to intense heat and the scouring action of flames and unburned particles of fuel. Under the best of conditions a brick will last less than three months. In the earlier devices it was impossible to remove one brick without disturbing the others in the arch. This difficulty the Graham & German patent overcame.

Defendant, however, contends that the patent is anticipated by the Edge Moor 1901 structure and the Tonkin patents for water tube boiler baffles already referred to. It is true that these devices disclose brick baffles in which the several bricks are independently supported on tubes. But such baffles need not and could not easily be removed and changed. They need not, because, unlike the refractory brick arch in a locomotive box, they are not affected by the fire and scouring action of flame. Moreover, replacements because of breakage are normally required only when the boilers are cleaned or repaired. The water tube baffles are not readily accessible, and cannot easily be removed and changed, because they are surrounded by a great number of water tubes. Indeed, it seems that removal and replacement are practicable only when the boiler is shut down for repairs or overhauling. In the case of Moore patent, No. 904,494, I was unable to find that any new function was performed or any new result was achieved by the use of a marginal brick in much the same manner in a locomotive arch as it had previously been used in a water tube boiler. But in the case of the Graham & German patent the record indicates that a different function was performed and a new result achieved. Consequently it cannot be said that invention was not involved.

[3] 3. Neff standard M brick patent No. 1,138,033 (filed September 14, 1911, issued May 4, 1915). Most of the claims relied upon describe an invertible or reversible brick, having both its upper and lower end corners beveled

for receiving supporting tubes, the beveled portions of the lower end corners being spaced apart a distance different from that between the upper end corners, so that the brick may be adjusted to supporting tubes of different diameters and spacings. Defendant denies that the slight taper on the upper end corners of its bricks 'are intended or adapted to affect this reversible function, and the plaintiff's proof fails, in my opinion, to meet the burden of establishing infringement.

Only in claim 5 is this reversibility of the brick missing. In it the arch brick is stated to be "provided with a plurality of recesses in its bottom, forming trussing means comprising a pair of ribs crossing each other adjacent to their central portions and an edge rib extending around the bottom of the brick into which the cross ribs merge, the brick being provided at opposite ends with supporting surfaces to engage arch tubes." The specifications point out that brick of this character is designed to maintain a maximum of strength with a minimum of material. Claim 5, if valid, is admittedly infringed. While the qualruple-recess brick of this patent seems to have much merit, and undoubtedly possesses certain advantages over the double-cavity brick shown in the F., E. & M. V. 1898 prior use, and in the patents in the prior art, like Stevens, No. 929,724 and Walker No. 260,810, which describe recesses or corrugations in arch bricks, nevertheless, in my judgment, the mechanical improvement in the form of the brick, even commercially valuable, represents no patentable advance.

[4] 4. Neff wing' brick, patent No. 1,046,008 (filed September 14, 1911, issued December 3, 1912). Plaintiff relies on claims covering a furnace arch brick adapted to engage a supporting tube at one end, and at the other end . comprising two surfaces inclined from the edge of the brick to a central meeting point, and' adapted to engage a side sheet at such meeting point,· the end· of the brick having the inclined surfaces being relatively thin as compared with the body of the brick. Defendant contends that his side or marginal brick lies flat against the side sheet when properly installed. If the side brick does not lie flat, it would seem to lie on a, line bearing, and if in some cases the contact is at a single point, this would seem to be quite fortuitous. The proof fails, in my judgment, to establish that the juncture of .contact is designed to be so short as to be the equivalent of the central· meeting point referred to in the Neff patent. Infringement, consequently, is not established. ·

It is therefore unnecessary to consider whether this patent involves invention, and, if so, whether it is anticipated by the side brick described in Moore patent No. 904,494, "having relatively inclined ends or edges and one end or edge having a point or projection for engagement with a furnace side sheet."

[5] 5. Neff combustion stream retarder, patent No. 1,138,031 (filed May 25, 1907, issued May 4, 1915). The claims alleged to be infringed cover "a locomotive boiler and its contained fire box and flues, in combination with, a substantially imperforate refractory arch interposed between the flues and the bottom of the fire box, the bottom of said arch being formed to divide the products of combustion into longitudinal streams and containing a plurality of longitudinal rows of distinct noncommunicating recesses adapted to retard said' products and break up said streams." The defendant admits infringement, but denies validity. ·

The patented structure seems almost identical with Moore patent, No. 904,494, except for "the distinct noncommunicating recesses adapted to retard the products and break up the streams." Defendant denies the advantages claimed for the recesses in respect to combustion, and contends that the chief value of such recesses is · the saving of material which they make possible. But, whatever be the value of such recesses, in view of the prior use of the F., E. & M. V. 1898, arch, and of the C. & N. W. 1904, both of which in my opinion, were established beyond a reasonable doubt, and of the recesses or corrugations shown in the Walker and Stevens patents, heretofore 'referred to, I am unable to find patentability in Neff's structure. It may be quite true that the prior uses and patents did not reach such a high stage of practical or commercial success, but the elements they .disclose none the less demonstrate the invention was not involved in the subsequent advances.

[6] 6. Moore inclined interlock brick, patent No. 990,375 (filed September 23, 1908, issued April 25, 1911). This patent contains 78 claims. all of which, with one exception, variously describe a specific form of arch composed of so-called spans and panel bricks not readable on the defendant's structures. Claim 66, however, is much broader in terms:

"A locomotive boiler fire box in combination with a plurality of refractory spans composed of elongated bricks extending upwardly from the sides of the fire box and inwardly and forwardly inclined, means interlocking the butting ends of each pair of bricks and each side brick containing an elongated recess in its under side."

But, unless this claim is restrictively construed in the light of the specifications, in which case it could not be read on any of the defendant's structures, it is difficult to find any patentable invention therein. F., E. & M. V. prior use of 1898, as has already been observed, shows elongated or recess bricks, and these are interlocked by means of a square key. The means of interlocking by a half tongue and half groove in each of co-operating bricks may be an improvement, but the art of brick-working had advanced beyond the stage when such a means of interlocking, although useful. could be deemed a patentable advance.

[7] 7. Moore interchangeable brick, patent No. 1,138,037 (filed February 14, 1912, issued May 4, 1915). The claims alleged to be infringed cover "a locomotive boiler fire box in combination with a refractory arch therein, and composed of oppositely inclined interchangeable elongated bricks, each thereof having an arch tube socket in its lower end, an interchangeable interlock as its upper end and containing a gas mixing pocket in its under side."

The patent, if broadly construed to cover the defendant's structures, would seem to differ from the prior use evidenced in the Northern Pacific 1904 arch only by reason of the recesses or gas pockets in the under sides of the bricks and the means of interlocking through a half tongue and half groove on each of the co-operating bricks. The addition of either or both of these elements, as has already been indicated, did not at that time involve invention. The means of interlocking by a half groove, half tongue arrangement, is disclosed in the earlier Moore inclined interlock brick, patent No. 990,375, heretofore considered.

[8] 8. Moore spacer block, patent No. 1,069,974 (filed July 13, 1908, issued August 12, 1913). Claim 3, in suit, reads as follows:

"A locking brick or block for locomotive furnace arches having relatively inclined ends and relatively inclined sides and its long side provided with a longitudinal groove to fit an arch tube, said block being longitudinally tapered and of greatest area at its end, which is adapted to be placed against the arch, substantially as described."

Infringement is conceded, if the claim is valid.

A spacer block fits between the lower edge of the arch and the flue sheet. It serves to lock or hold the arch body against lateral movement upon the supporting tubes. Moore was not the first to use such a spacer or saddle brick. But his brick was a considerable practical advance over the original saddle bricks, because his brick, being tapered on the sides and made as narrow as possible on the top, avoided the accumulation of slag upon the top of the brick, and the consequent blocking up of the opening between the arch and the flue sheet. Yet his design seems to be one which would naturally suggest itself to one skilled in the art, and, despite its value, I am unable to find that it represents a patentable invention.

[9] 9. Willet spacer lift brick, patent No. 1,342,931 (filed April 24, 1919, issued June 8, 1920). This patent covers "an arch construction for fire boxes, comprising in combination an arch tube, a refractory arch carried thereon, and an arch elevating brick, said brick having a tube-engaging surface on one face and an arch-supporting surface and an arch abutment on the opposite face." Infringement is conceded, if the patent is valid.

The Willett spacer brick represents in some respects a substantial improvement in design over the Moore spacer brick. Most of its features, however, are embodied in the prior use of the D, M & N, brick, and in so far as they are not so embodied, I cannot find invention.

[10] 10. The Gaines wall, patent No. 934,157 (filed April 10, 1909, issued September 4, 1909). This patent includes "the combination with a locomotive boiler fire box having a flue sheet of a separate and independent bearer extending across the fire box, near the bottom thereof, a mud ring, connections securing the ends of said bearer to the side portions of the mud ring, grate bars extending between said bearer and the rear of the fire box, a bridge wall of refractory material supported on said bearer, and forming a division between the fire chamber space above the grate bars and a combustion chamber space between its forward side and the flue sheet, said bridge wall containing a plurality of air passages which open at their upper ends into the fire chamber space and at their lower ends to the atmosphere, a bottom plate closing the bottom of the combustion chamber space, a discharge hopper, secured to the bottom plate below a central discharge opening therein, and a movable plate or slide closing the discharge hopper." If the patent is valid, infringement is conceded.

Gaines did not purport to invent the use of the combustion chamber in the fire box, but aimed to obviate by his combination a number of mechanical defects in the forms already in use. The object of his invention, as he states it, is the provision of means "whereby the recognized advantages of a combustion chamber interposed between the grate and the flues, in the particulars of economy of fuel and increase in the life of flues, may be made available at a materially less cost than where a combustion chamber located within the waist of the boiler is employed, as in ordinary practice, and a substantial reduction in the evolution of smoke from the stack be also attained."

The defendant maintains that, while Gaines may have accomplished a considerable practical advance, all the elements of an inventive character defined in the Gaines patent are found in Helbling patent, No. 881,072, except the air passages in the wall, an element in one claim, and that these are disclosed in Best patent, No. 761,624. Plaintiff contends that the Helbling wall is not supported by a separate and independent bearer in the manner of the Gaines wall, but is attached to the bed plate of the engine and is carried by the frame of the engine. It is alleged that the expansion of the boiler would disturb the proper relation of the wall to the boiler, and make the Helbling structure defective and unworkable in practice.

As to Strong patent, No. 475,357, also relied upon by the defendant as a partial anticipation of Gaines, plaintiff contends that it does not clearly disclose how the bearer for the cross wall is attached to the boiler; further, that it has never been put to practical use. While recognizing considerable force in plaintiff's contention, I have concluded, though with some doubt, that, despite the practical strides forward made by Gaines, his patent must be declared void, in light of the disclosures in the prior art.

[11] 11. Rogers patent, No. 1,178,752 (filed September 24, 1913, issued April 11, 1916). This patent covers "in a locomotive boiler fire box, a transverse refractory wall arranged at the forward end thereof and spaced from the flue sheet, a bridge member spanning the fire box and supporting the wall, said wall being provided with vertically extending passages, hollow metallic wall supports secured at their lower ends to said bridge member extending upwardly in said passages, retaining the wall in position and adapted to admit air to the fire box." In his application Rogers states that his invention "aims to provide a fire brick arch which may be constructed from fire brick now manufactured and placed upon the market without alteration and without the employment of brackets or bolts and without in any way obstructing or rendering less efficient the air passages through the arch."

In the practical development of the so-called Gaines wall, Rogers made, it seems, a real and valuable contribution. The brick stays used as backing for the wall of the combustion chamber in the early devices deteriorated very rapidly. Rogers did develop an improved method of support. The use of metallic tubes for the specific purpose and in the specific manner Rogers describes in his patent is not revealed in the prior art, like Johnson, 529,795 or Travis, 823,562, and in my judgment involves invention. Infringement is conceded.

Case No. 1315.

[12] This suit was brought on a now expired patent owned by the Nagle Engine & Boiler Works. No evidence was taken thereon. After case No. 1334 was filed, the Universal Arch Company filed its so-called "Amended and Supplemental Bill" in No. 1315, as the owner of the Helbling patent, No. 881,072 (filed October 15, 1907, granted March 3, 1908), alleging that the American Arch Company's Gaines wall structures infringe upon the Helbling patent. As the Gaines wall structures have been publicly and widely used for 10 years and an extensive trade and good will have been developed, and as in that interval no objection apparently was made by the then owners of the Helbling patent, a court of equity will not entertain the suit for infringement, when no explanation of the laches is given, especially in favor of the owner of a paper patent, as to which plaintiff is not shown to have had actual knowledge, and the validity of which has never been established."

Both sides appeal.

Charles F. Murray and Wallace R. Lane, both of Chicago, Ill., for Universal Arch Co.

Paul Synnestvedt, of Philadelphia, Pa., for American Arch Co.

Before BAKER, ALSCHULER, and EVANS, Circuit Judges.

PER CURIAM. Use of fire brick in arches and baffles in furnaces was very old. In adapting for use in the fire boxes of locomotives the devices that were known in connection with stationary boilers, the question in each instance was whether the adaptation came from the ordinary advance due to the mechanical skill of the practitioners of the art, or whether there was an additional advance that came from the creative imagination of one who was therefore entitled to rank as an inventor. Of course, all doubts should be resolved in favor of patentees, and every shred of inventive progress should be protected. But the trouble is that no absolute yardstick has been devised.

On reviewing the record in this cause we are left with the conviction that the proper spirit of approach and method of disposition are evidenced in the opinion which led to the decree that is now affirmed.