## VAN ALEN v. ALUMINUM CO. OF AMERICA et al.

District Court, S. D. New York.
March 18, 1942.

834

Harry Price, of New York City, for plaintiff.

Cooper, Kerr & Dunham, of New York City (Clinton Blake Townsend, of New York City, and W. Darley Keith, of New Kensington, Pa., of counsel), for defendant Aluminum Co. of America.

RIFKIND, District Judge.

The complaint alleges two causes of action at law: One for damages arising out of patent infringement and another for conversion of a drawing. The case has been through an extensive pre-trial history, as a result of which the pleadings depart considerably from those standards of simplicity which it was the aim of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, to establish. There is also considerable dispute concerning the meaning and effect of certain stipulations

and orders which were intended to segregate the issues triable to a jury from the issues triable without a jury. I have come to the conclusion that the stipulations and orders do no more than give effect to the applicable rules; and that the only issues triable without a jury are the defense of laches and the counterclaim for an injunction restraining the plaintiff from representing that the defendant is infringing plaintiff's patent and from threatening to sue defendant's customers. Liberty Oil Co. v. Condon Bank, 1922, 260 U.S. 235, 43 S. Ct. 118, 67 L.Ed. 232; Fitzpatrick v. Sun Life Assur. Co., D.C.N.J.1941, 1 F.R.D. 713.

■ Defendant[1] has also counterclaimed for declaratory judgment adjudging the patent invalid. It asks that this issue be likewise tried to the court without a jury. It is well settled that such a counterclaim may be interposed. Leach v. Ross Heater & Mfg. Co., 2 Cir., 1939, 104 F.2d 88; Lances v. Letz, 2 Cir., 1940, 115 F.2d 916.

■ But it does not follow that plaintiff may thereby be deprived of a trial by jury of the issues of patent validity and infringement where the complaint seeks no injunctive relief or other equitable remedy. Pacific Indemnity Co. v. McDonald, 9 Cir., 1939, 107 F.2d 446, 131 A.L.R. 208; United States F. & G. Co. v. Koch, 3 Cir., 1939, 102 F.2d 288; Rule 57, Federal Rules of Civil Procedure.

The logic of permitting the interposition of a counterclaim for declaratory judgment was summarized by Patterson, Circuit Judge in Leach v. Ross Heater & Mfg. Co., supra. The counterclaim has value and significance as strategy. The patentee may withdraw his suit and the controversy left undetermined on the merits. The counterclaim is protection against that contingency. It does not in fact contribute a new or additional issue. Consequently, unless the complaint is abandoned, there is no additional issue tendered by the counterclaim which requires separate trial with or without a jury.

Plaintiff was the architect of the Chrysler Building in New York City. In that capacity he prepared a drawing of a window sill which he caused to be delivered to Fred T. Ley Co., the contractor, which, in turn, delivered it to defendant. Defendant manufactured the sills with the aid of a die which it prepared for the purpose.

The drawing prepared by plaintiff was shortly thereafter incorporated by him in a patent application filed on September 18, 1929. On December 5, 1929, plaintiff wrote the defendant informing it that he had filed an application for a patent covering "the aluminum sills which were made by you and installed in all the windows of the Chrysler Building" and suggesting an early conference for the discussion of future installations "as it is very important that no time be lost". On December 27, 1929, plaintiff caused a copy of the patent application to be sent to defendant in response to the latter's request therefor. Plaintiff followed this with a letter to defendant on January 10, 1930, expressing the opinion that considerable business in the sills was in prospect and disclosing his desire to make an arrangement with someone interested in marketing the article.

There is no evidence of any further communication between plaintiff and defendant until March 12, 1931. On that day plaintiff's attorney wrote to defendant advising it that the patent on the window sills had been issued on March 3, 1931, and that, "it is our contention that the Alcoa aluminum window sills which you have been selling and installing in numerous buildings through the country, without permission or sanction of Mr. Van Alen, * * * and which are shown and described in your circular 'A. I. A. File No. 15J, Jan. 1931' are an absolute infringement of both of the claims of the Van Alen patent". Failing an understanding, the writer suggested that it was his client's intention to institute suit for injunction and damages.

To this communication defendant responded with a letter from its attorneys, dated March 20, 1931, tentative in character, and with another letter from its attorneys dated June 23, 1931, which was definitive in form, challenging the validity of the patent and concluding thus: "In view of this opinion our clients propose to continue manufacturing and selling window sills and window sill sections as before". Following this communication, the plaintiff did nothing until he instituted the present suit for patent infringement on March 7, 1940. Not until July, 1940, did he add by

[1] "Defendant" will be used to designate Aluminum Company of America; "Defendant Braun" will be used to designate J. G. Braun Co.

amended complaint the cause of action for the conversion of the drawing.

■ Clearly, the delay is of sufficiently long duration to constitute laches provided the other elements of that defense are present.

Has plaintiff had notice of the alleged infringement? Manifestly, plaintiff had such notice and knowledge on March 12, 1931, when his attorney wrote to defendant charging it with numerous infringing installations throughout the country. Furthermore, that letter indicated that plaintiff had knowledge that defendant was advertising the accused article since it referred expressly to one of defendant's circulars describing it.

Any hope plaintiff might have entertained that his patent claim would be honored by plaintiff after the letter of March 12, 1931, must have been shattered by the response of defendant's attorneys under date of June 23, 1931, that defendant proposed to "continue manufacturing and selling" the allegedly infringing window sills.

Between 1930 and the commencement of the suit the accused window sills were repeatedly advertised not only by the direct publications of the defendant but also in magazines of wide circulation, both professional and popular in character.

Furthermore, the sills in question were annually listed in Sweet's Catalogue—a publication distributed to practicing architects—annual editions of which were in plaintiff's office from 1930 to 1940.

■ Plaintiff asserts that he saw neither the architectural magazines nor the popular ones; that he deliberately abstained from reading architectural magazines because he was "not particularly interested in what my fellow men are doing". He testified:

"I wish to do things original and not be misled by a lot of things that are being done by somebody else.

"Q. And you don't pay attention to anybody's work but your own? A. That is my general policy." [2]

Assuming that we accept plaintiff's statement, does it follow that he is not guilty of laches? The Court of Appeals of this Circuit has held otherwise. In Tompkins v. St. Regis Paper Co., 2 Cir., 1916, 236 F. 221, 224, the court said: "Acquiescence and laches, however long, on the part of a patentee, may be excused by satisfactory proof that he had no knowledge or means of knowledge that his patent was being infringed. * * * As the Supreme Court has pointed out, the defense of want of knowledge on the part of one charged with laches is one easily made, easy to prove by the person's own oath, and hard to disprove. There has been and is therefore a tendency to insist that a party, thus alleging a want of knowledge, should have used reasonable diligence to have informed himself of the facts". Surely, plaintiff had the means of knowledge; certainly, reasonable diligence would have brought home to him the extensive campaign conducted by defendant to market the accused sills.

■ This inference is all the more easily drawn when the patentee is an active practitioner in the field of endeavor where his claimed invention plays a part. It may well be emphasized that plaintiff had been put upon such notice and inquiry by defendant's letter of June 23, 1931, as to provoke even a very lethargic curiosity. Furthermore, the discovery of infringement did not require burdensome investigation. It called for no more than simple observation of what was necessarily exposed to view.

The evidence as to the quantity of actual installations of the accused window sills supports the inference that plaintiff would have acquired knowledge had he but opened his eyes. Sales of aluminum window sills, either admittedly within the scope of the patent or indistinguishable in appearance from those so admitted, occurred each year from 1930 to 1940 to an aggregate exceeding 500 thousand pounds.

Defendant Braun sold the accused window sills in New York City where plaintiff had his office and also in Chicago. In both cities sales occurred every year from 1930 to 1940. The sales by defendant Braun in New York alone aggregated over nine thousand running feet. All of defendant Braun's sales were of material manufactured by defendant.

---

[2] Davilla v. Harms, Inc., D.C.S.D.N.Y. 1940, 36 F.Supp. 843, 844. There the court said: "In this connection, I might add that the plaintiff's testimony of his apparent indifference to listening in to any other form of music but his own does not impress the Court".

Plaintiff's only explanation in justification of the delay is that between 1932 and 1937 there was a slump in building activity. That fact, however, does not exculpate plaintiff's neglect; for while it might be argued that the quantity of sills sold would be inconspicuous if introduced into the large volume of construction which prevailed in the United States in 1929, its introduction into the small volume of the 1932–1937 period could not have escaped notice by an architect who had a special interest in the commodity. By 1938 such large scale undertakings as the Ten Eyck Federal Housing Project in Brooklyn, New York, where plaintiff resided, were employing the window sills under consideration; and defendant was widely advertising that fact by means of a photographic reproduction of that project alongside the very Chrysler Building for which plaintiff claims to have contrived his invention. Nor does plaintiff offer any explanation for the delay between 1937 and 1940.

■■■ Has there been a change of position on the part of defendant which is referable to plaintiff's delay? Before considering this question on the merits it is advisable to dispose of one argument urged by plaintiff which, if valid, would require different treatment of the evidence on this point. The argument is that since defendant made a motion for summary judgment under Rule 56 in reliance on the defense of laches, which Judge Clancy denied, the court is now precluded from finding laches unless evidence additional to what was before Judge Clancy is presented on the trial. This argument is founded upon a misconception of the office of summary judgment. On such a motion the question is whether there is an issue to be tried. If there is a triable issue which then goes to trial, the question is how that issue is to be resolved in the light of the evidence. On consideration of a motion for summary judgment evidence is not normally weighed nor the burden of proof allotted. When a motion for summary judgment is denied the holding is that there is an undisposed of issue requiring trial. Such a decision cannot be said to have disposed of the issue. For these reasons no attempt is here made to separate the evidence into two categories.

■■■ The evidence shows that since 1930 defendant has built up a considerable business in aluminum window sills alleged to be within the scope of the patent. In order to accomplish this end, defendant has spent about $250,000 in advertising, not all of which was devoted exclusively to the accused article. Much of it was so devoted and the balance cannot be readily separated or segregated. The court may perhaps take judicial notice that defendant sells many other products of which aluminum window sills represent but a minute fraction. Nevertheless, it cannot be doubted that an activity in which almost a quarter of a million dollars has been invested in advertising alone, for which hundreds of dies have been manufactured and which has attained a sales capacity averaging over fifty thousand pounds of aluminum a year is in its own right a very substantial enterprise.

These facts in and of themselves constitute the change of position which is one of the constituent elements of the defense of laches. Westco-Chippewa Pump Co. v. Delaware Electric & Supply Co., 3 Cir., 1933, 64 F.2d 185; Dwight & Lloyd Sintering Co., Inc., v. Greenawalt, 2 Cir., 1928, 27 F.2d 823; A. R. Mosler & Co. v. Lurie, 2 Cir., 1913, 209 F. 364; Peerless Weighing & Vending Machine Corp. v. International Ticket Scale Corp., D.C., Del.1941, 37 F. Supp. 582; Boyle Leather Goods Co., Inc., v. Feldman, D.C., S.D.N.Y.1940, 30 F.Supp. 914.

The authorities no longer support plaintiff's contention that since the defendant indicated in 1931 its intention to continue, regardless of plaintiff's claims, plaintiff's delay cannot mature into laches. This argument rests on the notion that defendant must show, if it would plead laches, that it would not have proceeded but for the delay; or, to put it conversely, that defendant's confidence in its rights immunizes the plaintiff against the defense of laches. I do not find any such ingredient in laches as developed by the authorities. The question was considered in Dwight & Lloyd Sintering Co., Inc., v. Greenawalt, supra [27 F.2d 827], where Learned Hand, Circuit Judge, wrote for the Court as follows: "Meanwhile Greenawalt had built up a very large business, which he estimates to amount in all to about 300,000 tons a year. It is quite true that this has not been by building his own plants; he has exploited his invention only by granting licenses, but the assurance born of such long inaction is for that reason no less. In the case of any accounting, the result of a decree is never more than to take from the

infringer money that he has collected in the past, or to charge him with damages. The disuse of his plant follows only upon an injunction, and, as substantially all the decisions turn upon the right to an accounting, they are as relevant when the infringer has not manufactured as when he has. It is often said that mere delay will not serve as a bar even to the accounting. Ide v. Trorlicht, etc., Co. [8 Cir.], 115 F. 137, 148; Columbia Graphophone Co. v. Searchlight Horn Co. [9 Cir.], 236 F. 135, 140; Drum v. Turner [8 Cir.], 219 F. 188, 198; Baltzley v. Spengler Loomis Mfg. Co. [2 Cir.], 262 F. 423, 426; Smith Hardware Co. v. [S. H.] Pomeroy [Co., 2 Cir.]; 299 F. 544. These cases say that there must be some assurance of impunity, the disappointment of which amounts to an estoppel. We are so to understand the law, and yet it remains true that in most of those cases where relief has been denied no further assurance was given than that arising from the patentee's long inaction. Each year as it passes inevitably builds up a belief, if nothing has been done, that the patentee does not suppose his rights invaded, and, if the time be long enough, the infringer garners the harvest of even the earliest of the 6 years to which recovery is in any event limited, with just confidence that he will not be disturbed. To allow this reasonable inference to be upset, and his financial life perhaps to be gravely deranged, is thought to be incommensurate with the importance of the patentee's stale claims. At any rate, whatever the explanation, there is abundant authority to deny an accounting when the patentee has let the infringer slowly build up a large business without protest. [A. R.] Mosler & Co. v. Lurie [2 Cir.], 209 F. 364, 370; Wolf, Sayer & Heller v. United States, etc. Co. [7 Cir.], 261 F. 195; Window Glass Mach. Co. v. Pittsburgh Plate Glass Co. [3 Cir.], 284 F. 645, 650; Richardson v. [D. M.] Osborne [& Co., 2 Cir.], 93 F. 828; Universal Arch Co. v. American Arch Co. [7 Cir.], 290 F. 647, 653; Cummings v. Wilson, etc., Co. [9 Cir.], 4 F.2d 453; Simpson v. Newport, etc., Co., D.C. 18 F.2d 318, affirmed [2 Cir.], 18 F.2d 325."

 As far as defendant Braun is concerned, since it is but a customer of defendant, it is covered by the protection which laches affords the latter. Boyle Leather Goods Co., Inc., v. Feldman, supra.

 Sometimes laches will bar all relief for the patentee. Sometimes only the accounting is barred but not the injunction. A. R. Mosler & Co. v. Lurie, 2 Cir., 1913, 209 F. 364, 370.

Here, we need not consider into which category this case falls, since plaintiff seeks no injunctive relief.

The defendant having successfully established the defense of laches, the complaint is dismissed.

No proof in support of defendant's counterclaim for injunctive relief has been offered and that counterclaim is likewise dismissed.

Settle findings.