**Peter LEVESKI, Plaintiff,**

v.

**HYDRAULIC ELEVATOR AND MACHINE CO., Inc., and General Elevator Corp., Defendants.**

United States District Court
S. D. New York.
March 30, 1965.

Paul P. Rao, Jr., New York City, for plaintiff.

Hopgood & Calimafde, New York City, for defendants.

CROAKE, District Judge.

In this action the plaintiff sues to enjoin the alleged infringement by defendants of a United States Letters Patent on an invention. The defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the ground that the plaintiff is not entitled to his patent because more than one year prior to the date of application for the patent the invention was sold and in public use. See 35 U.S.C. § 102(b).[1]

United States Letters Patent No. 3,-105,573 (herein the patent) was issued to the plaintiff on October 1, 1963. The subject of the patent is in dispute. The defendants contend that the " * * * patent relates to a control *system* for hydraulic elevators which are automatically operable by an electric push-button system." (Emphasis supplied.) Plaintiff on the other hand urges that his invention is a specific electrical control *board* consisting of a fixed part and a movable part which can be used to bring about the " * * * push-button electric operation of an hydraulic elevator."

Since the application for the patent was made on October 4, 1960, the critical date for determining the existence of an invalidating public use or sale of the invention pursuant to 35 U.S.C. § 102(b) is October 4, 1959. The plaintiff was employed by the defendants from January 1957 through October 1960. The defendants allege that during this period of time the plaintiff worked on and helped install hydraulic elevator conversion systems. The plaintiff denies this latter allegation and asserts that the terms of his oral employment agreement with the defendants were in substance as follows: (1) he was to demonstrate to the defendants the practicality of his invention for the electrical conversion of hydraulic elevators; (2) upon making such a demonstration the defendants at their cost were to obtain a patent and pay royalties to the plaintiff for the use of his invention; and (3) in exchange for the foregoing the defendants were to have a first option on a license of the patent.

During the term of the employment of plaintiff by the defendants, several hydraulic elevators owned by third parties were converted to an automatic electrical system by means of the invention of the plaintiff. The defendants were paid for this work. These converted elevators were located in buildings which were heavily trafficked by the public. The elevators in four of the five buildings were successfully converted to electric

---

1. 35 U.S.C. § 102(b) provides in part as follows: "A person shall be entitled to a patent unless—(b) the invention was * * * in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, or * * *."

push-button service by February 16, 1959.

The defendants allege that the plaintiff negotiated for the contracts and helped with the mechanics of converting the hydraulic elevators. In addition, it is alleged that plaintiff had full knowledge of the progress of each conversion job. The plaintiff denies that he helped in the mechanics of each conversion. He alleges that he was in charge of each conversion for the purpose of experimenting so that he might perfect his invention. The defendants allege and the plaintiff denies that by October 4, 1959 the invention described and claimed in the subject patent was conceived, reduced to practice, and completed. Neither of the parties dispute, however, that the above-mentioned elevator conversions utilized all of the essential principles and claims of the patent and would if the patent were valid and enforceable constitute an infringement of the same. The defendants allege that for certain periods of time prior to October 4, 1959, the plaintiff performed no experiments on the above-mentioned hydraulic elevators. The plaintiff denies this allegation and contends that until his discharge by the defendants in 1960, he supervised, inspected, tested and checked the above-mentioned hydraulic elevators.

The plaintiff contends that he had constructed at his home a makeshift push-button control board and that in order to perfect it, it was necessary for him to experiment upon the above-mentioned hydraulic elevators used by the public. He alleges that because each of these elevators had different types of main hydraulic valves, special adjustments had to be made to his control board for each conversion. It is the position of the plaintiff that as a result of this experimentation he was able to perfect his invention so that it could be used for most common types of hydraulic elevators. Plaintiff further alleges that the invention claimed on the patent was not perfected until April of 1960

Under the undisputed facts of this case, the aforementioned conversion of the hydraulic elevators constituted a public use by plaintiff of his invention prior to October 4, 1959 within the meaning of 35 U.S.C. § 102(b). Egbert v. Lippmann, 104 U.S. 333, 26 L.Ed. 755 (1881). The plaintiff, relying upon Peerless Roll Leaf Co., Inc. v. Griffin and Sons, Co., 29 F.2d 646 (2d Cir. 1928), as authority, contends that although the invention was sold for profit, the conversion of the hydraulic elevators did not constitute a public use because the manner in which the control boards were installed prevented inspection or understanding by the public. The holding of the Peerless case, supra, has been expressly rejected in the much later case of Metallizing Engineering Co., Inc. v. Kenyon Bearing and Auto Parts Co., Inc., 153 F.2d 516, 519 (2d Cir. 1946), cert. den. 328 U.S. 840, 66 S.Ct. 1016, 90 L.Ed. 1615 (1946). The case cited by the plaintiff was based upon the erroneous assumption that the patent laws provided a time limit in which to make application subsequent to public use of the invention on the theory of abandonment by the inventor. The court in Metalliing Engineering Co., supra, quite clearly pointed out that the rationale of 35 U.S.C. § 102(b) is to discourage an extension of the patent monopoly so that the public shall as soon as possible have the benefit of disclosure of the invention and the actual secrecy of an invention sold and/or in public use is not a factor to be considered. See also Egbert v. Lippmann, supra.

The defendants, having established that there has been a public use of the invention, contend that in order to avoid invalidation of the patent it is now incumbent upon the plaintiff to establish that the above-mentioned elevator conversions were made primarily for the purpose of testing and experimentation. See Smith and Griggs Mfg. Co. v. Sprague, 123 U.S. 249, 257, 8 S.Ct. 122, 31 L.Ed. 141, 144 (1887); and Atlas v. Eastern Air Lines, Inc., 311 F.2d 156, 160 (1st Cir. 1962), cert. den. 373 U.S. 904, 83 S.Ct. 1290, 10 L.Ed.2d 199 (1963).

While, upon the trial of this action, the plaintiff may have the burden

of going forward to establish that the primary purpose of the elevator conversions was that of experimentation, the contrary is true on this motion by defendants for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. On a motion for summary judgment the burden of establishing the non-existence of any genuine issue of fact is upon the moving parties and all doubts are to be resolved against said moving parties. Sprague v. Vogt, 150 F.2d 795 (8th Cir. 1945), mdf'd 164 F.2d 312 (8th Cir. 1947); Gonzales v. Tuttmann, 59 F.Supp. 858, 861 (D.C.N.Y. 1945); Van Alen v. Aluminum Co. of America, 43 F.Supp. 833, 837 (D.C.N.Y. 1942); Revlon, Inc. v. Regal Pharmacy, Inc., 29 F.R.D. 169, 171 (E.D.Mich.S.D. 1961); Castlegate, Inc. v. National Tea Co., 34 F.R.D. 221, 229 (D.C.Colo.1963).

Neither of the parties have presented convincing evidence to the court as to whether or not the invention of the plaintiff was further perfected as a result of the elevator conversions or whether the primary purpose of said conversions was additional experimentation on the part of the plaintiff. There has been no analysis presented by either party of the differences or lack of differences between the invention claimed on the patent and the control board used in the above-discussed elevator conversions.

The defendants in this connection rely almost entirely upon certain responses to interrogatories and a notice to admit made by the plaintiff in a related action between the same parties in the courts of the State of New York. In that action, the plaintiff in this action sues the defendants in this action for damages resulting from the alleged misappropriation of another invention of the plaintiff used in the conversion of hydraulic elevators. The responses of plaintiff to interrogatories and a notice to admit which are pertinent to this motion are attached as exhibits to the moving papers of the defendants. The statements of the plaintiff contained therein are clearly inconsistent with the position he takes in the

instant action which is that his invention was not perfected prior to October 4, 1959. This inconsistency is best exemplified by the following answer of plaintiff to item number 23 of interrogatories propounded to him by the defendants:

"23. Q. Referring to 'plaintiff's statement on defendants' first request for admissions', paragraphs 1 and 2, state when and where plaintiff determined that each of the inventions; i. e., covered by patent No. 2,913,070 and covered by patent No. 3,105,573, were 'fully developed' and state whether any changes had to be made with respect to the utilization of such inventions in the first commercial endeavors, and specifically identify those changes which had to be made before either of said inventions were used by defendants.

A. The inventions covered by the patents referred to were fully developed by the plaintiff in 1956 in New York City and no changes were made in respect to the utilization of such invention in the first commercial endeavors which were merely demonstrations by plaintiff to the defendants of the actual working of the plaintiff's fully developed invention, which demonstration the plaintiff expressly undertook by his oral agreement with the defendants for the purpose of ascertaining the cost of such conversions and determining the reasonable royalty to be paid by the defendants to

plaintiff for the use of his invention in such conversion."

 The court, however, on the basis of these responses alone may not grant summary judgment to the defendants. Section 3123(b) of the CPLR of the State of New York provides that any admission made by a party pursuant to a notice to admit is binding for the purpose of that pending action only. Thus, the plaintiff is not bound in the instant action by his responses to the notice to admit in the state court action. Furthermore, Section 3131 of the CPLR provides that the answers to interrogatories may be used to the same extent as the depositions of a party. And it has been held that testimony taken of a party at an examination before trial is not in and of itself such a conclusive admission so as to support summary judgment because it may be met by other evidence at trial which will deprive it of that conclusiveness. See Rogers v. Hirshon, Sup., 213 N.Y.S.2d 612 (1961), and Brooks v. City of New York, 1 Misc.2d 740, 149 N.Y.S.2d 592 (1956).

In accordance with the foregoing, summary judgment at this time may not be granted, and the motion of the defendants is in all respects denied.

So ordered.