**MARVEL SPECIALTY COMPANY, Inc., Plaintiff,**

v.

**MAGNET MILLS, INC., Defendant.**

**No. 64 Civ. 2127.**

United States District Court
S. D. New York.
March 28, 1969.

Robert F. Conrad, J. Russell Verbrycke, III, Washington, D. C., for plaintiff, Harvey E. Bumgardner, Jr., New York City, of counsel.

Julius J. Rosen, New York City, for defendant, Louis Necho, Philadelphia, Pa., of counsel.

OPINION

THOMAS F. MURPHY, District Judge.

In this action plaintiff seeks a declaratory judgment that defendant's now expired patent No. 2,560,655 (hereinafter referred to as the '655 patent), issued on July 17, 1951, is invalid and was not infringed by the use of plaintiff's·device. Defendant counterclaims for infringement.

Both parties agree that the manufacture of ladies' nylon hosiery is hampered by the tendency of the nylon thread to accidently snag causing a loop to appear in the finished product, and that for years prior to the issuing of patent '655 this loop was corrected by spreading the snagged area of the stocking over an egg·cup device and by working back the threads with a needle or pick the snag loop was restored to its regular place. However, there still remained after such restoration· a wrinkled appearance in the area of the original snag.

The '655 patent disclosed a method of improving the appearance of the stocking by eliminating this "somewhat rough or wrinkled appearance" [United States Patent No. 2,560,655 (page 1, col. 2, ll. 11–12)] after the displaced thread has been worked back into place. The claim reads as follows:

"The method of improving the appearance of a knitted fabric which is formed of thermoplastic thread and a thread of which has been displaced from its normal position in the fabric, which method consists in working said thread back into place in the fabric, stretching the portion of the fabric in which said displaced thread is located to cause said thread to assume a smooth and uniform appearance, and subjecting said thread, while it is so stretched, to pressure and heat sufficient to soften but not to melt such thread to cause said thread to retain said smooth and uniform appearance." Id. page 2, col. 1, ll. 4–16.

The device, itself, which did not restore the snagged loop, consisted of a

work table which supported an anvil and a heated rocker arm. An operator, after the loop had been manually restored, would stretch the wrinkled area over the anvil. By operating a foot pedal the heated rocker arm would press down on the fabric. The combination of heat and pressure would eliminate the wrinkle and result in a smooth finish. Defendant's claim was restricted only to the method, and not the mechanical device. This method being the application of heat and pressure to the stretched out area.

Plaintiff's device, which was patented in 1951, was called a "mender." It consisted of a revolving head with picks which pulled the thread mechanically rather than by hand. In 1954 there was combined with this mechanical device a heated iron mounted in the handle of the mender. It is in circumference about the size of a dime and can be heated to enable the mender to repair the pulled threads with the mechanical picks and then, without removing the hose from the mending cup, to iron the repaired area with the "iron attachment." It is this iron attachment device which is claimed by defendant to infringe the '655 patent.

It is plaintiff's submission that the patent '655 is invalid by reason of the fact that, inter alia, its single claim is (1) anticipated by or represents nothing unobvious over the prior art, (2) that the claim is invalid for failure to particularly point out and distinctly claim the subject matter allegedly invented by the patentees and (3) that the disclosure of the patent is insufficient to enable those skilled in the art to which it relates to practice the alleged invention.

The patentees of the '655 patent do not claim that they were the inventers of the process of repairing, or the first to repair a pulled thread in a stocking by restoring the loops to their original position. As a matter of fact the method claim of the '655 patent as it was originally drawn did not include the restoration of the thread as a step in the process but started with the stocking in which a thread had already been restored as the initial step of the process. In substance, the claim of the '655 patent was a method by which a thread once restored back into place, was stretched to cause the said thread to assume a smooth and even appearance and then while it was so stretched subjecting it to pressure and heat "sufficient to soften but not to melt said thread, to cause said thread to retain said smooth and uniform appearance."

The thrust of plaintiff's argument is that it was old to remove wrinkles from a thermoplastic fabric by spreading it out and subjecting it to heat and pressure, going back to the long time use of ironing as a means for removing wrinkles. It summarizes its argument: "It is evident, therefore, that defendant's process merely applies an old expedient to an old problem to solve that problem in an old way."

In support of this argument plaintiff introduced the deposition of Malesky, one of the four inventers of the '655 patent, who acknowledged that prior to the date of the invention it was known that after a snag had been repaired, the wrinkled area of the stocking could be touched with a curling iron or the like to set the loops in restored form. This practice was confirmed by plaintiff's witness, Smith, the inventer of plaintiff's iron attachment device. He testified that hand irons were used as early as 1946 to smooth out the fabric.

Plaintiff also relied on two prior patents to show that the method advanced by the '655 patent was not novel. While we agree with the defendant that in order to show disclosure of an invention in a prior patent, the prior patent must show all of the elements of the claimed invention, Preformed Line Prod. Co. v. Fanner Mfg. Co., 328 F.2d 265 (6th Cir.), cert. denied, 379 U.S. 846, 85 S.Ct. 56, 13 L.Ed.2d 51 (1964), we feel that both the Schneider patent, United States Patent No. 2,313,173 (Mar. 9, 1943), and the Dunn patent, United

States Patent No. 2,333,160 (Nov. 2, 1943) show an awareness in the industry that heat and pressure could be utilized to restore the appearance of thermoplastic fabrics.

The Schneider patent involved a wrinkle removing procedure in which the fabric is merely stretched and subjected to heat. While it concededly does not in itself anticipate the '655 patent, it does acknowledge that it was old to remove creases "by ironing the cloth under the pressure of a heated surface or surfaces * * *" (page 1, col. 1, ll. 37–39). The Dunn patent involved the removal of wrinkles from thermoplastic fabric by placing the fabric on forms, made of a firm surface, and subjecting it to heat. Again, while this in itself does not anticipate the '655 patent, it certainly acknowledges the use of heat and pressure to remove wrinkles. Even though Dunn doesn't involve pressing the fabric, pressure is still present by the drawing of the material over the forms. This is similar to the pressure involved in the plaintiff's device where the heated iron is gently drawn over the wrinkled area.

■ Therefore, we find from the evidence presented that prior to the '655 patent it was well known in the industry that heat and pressure would remove wrinkles from thermoplastic material. Hence, we find defendant's '655 method patent invalid since prior knowledge in the art already encompassed the method claimed by the patent.

However, even if we are incorrect in concluding that the method embodied in defendant's patent was not novel, we hold that plaintiff must prevail for two other reasons, viz., that the disclosure of the '655 patent is insufficient to instruct those skilled in the art to practice the alleged invention, and that laches effectively bars any recovery on defendant's counterclaim.

■ The patent must include enough specifications to enable any one skilled in the art to effectively utilize the invention without experimentation.

Thompson v. Dicke, 110 F.2d 98 (C.C. P.A.1940). The '655 patent fails to meet this criteria in one crucial respect. That is, it does not specify how much pressure is to be applied by the operator of the device.

The patent speaks of pressing down with the "desired pressure", (page 1, col. 2, l. 28) and "pressure and heat sufficient to soften but not to melt such thread * * *." (Page 2, col. 1, ll. 13–14). Mr. Levin, the defendant's expert witness admitted that there is nothing in the specification which explains what the "desired" pressure is. He went on to explain that the only way one could determine the amount of pressure to be used would be by a trial and error process. In short, by experimenting.

Moreover, even if the patent was not invalid because of the above reasons, laches would prevent defendant from recovering damages on its counterclaim.

By 1954 plaintiff's accused device had gained wide acceptance in the industry. Defendant corporation is a successor to Prestige, Inc., which actually leased plaintiff's device in 1955. Defendant has continued to use it in its plants until the present time. Samuel Burd, the current chief executive officer of Magnet Mills was then president of Prestige. Yet Burd testified that the infringement first came to his attention in 1964, eleven years after the accused device had been on the market, and nine years after his own firm had started to use it. This inordinate delay in charging plaintiff with infringement, coupled with the actual use of the device by defendant for nine years bars any recovery of damages on the counterclaim even if it could succeed on the merits. A. R. Mosler & Co. v. Lurie, 209 F. 364 (2d Cir. 1913).

■ Defendant's defense to the charge of laches seems to be that Mr. Burd did not have actual knowledge of his firm's use of the accused device, or even of the existence of the device until 1964. He testified that he had nothing to do with, and was ignorant of, the negotiations that led to Magnet's rental of

**1030**

the devices. We do not find this defense persuasive. The lease agreements were signed by the comptroller of the then defendant corporation. Certainly his notice is chargeable to the corporation. Even if this was not the case, a patentee is charged with knowledge of the facts constituting an infringement which he could have known by the exercise of reasonable diligence. Van Alen v. Aluminum Co. of America, 43 F.Supp. 833 (S. D.N.Y.1942). In the instant case, since the patentee corporation was in fact using the accused device there is a complete lack of reasonable diligence.

Plaintiff is, therefore, entitled to a declaratory judgment that defendant's patent '655 is invalid and not infringed by plaintiff's devices. The defendant's counterclaim is dismissed.

Let this opinion stand for our findings of fact and conclusions of law.

Settle decree accordingly.